STEPHEN S. PLACE v. THE GRAND TRUNK RAILWAY COMPANY.

February Term, 1907.

Present: ROWELL, C. J., MUNSON, and WATSON, JJ., and HALL, SU-
PERIOR J.

Opinion filed August 9, 1907.

*Master and Servant—Injuries to Servant—Contributory Negli-
gence—Assumption of Risk—Question for Jury—Proximate
Cause—Duty to Charge—Evidence—Opinion—Experts.*

In an action for injuries to a servant, where the evidence fairly tends
to show negligence on defendant's part, and there is room for
opposing inferences in respect of plaintiff's contributory negli-
gence, both questions should be submitted to the jury.

Although a servant assumes the risks ordinarily incident to the busi-
ness in which he is engaged, he does not assume an extraordinary
risk existing through the fault of his employer, unless he ac-
tually or presumably comprehended it.

In an action for injuries to a railroad employee, resulting from the
collision of a switch engine with cars standing near the car on which
plaintiff was employed, as he was attempting to descend there-
from, evidence considered, and *held* to require that the questions
of negligence, contributory negligence, and assumption of risk be
submitted to the jury.

Whether a witness is qualified to testify as an expert is a preliminary
question of fact to be determined by the trial court, and its de-
cision thereon is not revisable where there is evidence tending to
support it.

In an action for injuries to a railroad employee as he was attempt-
ing to descend from a car, caused by a collision which he claimed
resulted from a defective split switch, an expert was properly
allowed to testify as to the effect on a train if it ran over a split
switch where the point of the rail was bent away from its fellow,
and to state that either the train would be derailed or take the
wrong track.

In an action for injuries to a railroad employee, resulting from the
collision of a switch engine with cars standing near the car on

which plaintiff was employed, as he was attempting to descend therefrom, the evidence presented issues as to whether the injuries were caused by the negligence of the hostler in charge of the engine, or was due to a defective switch, and whether defendant was negligent·in entrusting the engine to said hostler, or in failing to equip the switch with a lock, or in allowing it to become out of repair. The court charged that plaintiff could not recover if the accident was caused solely by the negligence of the hostler, and that the burden was on plaintiff to prove ·that defendant was negligent in failing to furnish plaintiff a safe place wherein to work, and that plaintiff was free from contributory negligence. *Held*, that it was error to refuse to instruct the jury as to the meaning of proximate and remote cause, and to fail to authorize them to find that the absence of a lock on the switch was the remote, and not the proximate cause of the accident.

In contemplation of law, negligence is the proximate cause of only the natural and probable consequence thereof, in the sense that a prudent man ought to have foreseen it; and whether the result complained of in a given case is such natural and probable consequence of the defendant's negligence is a question of fact for the jury, unless it is plain enough to be ruled as matter of law.

CASE for negligence. Plea, the general issue. Trial by jury at the October Term, 1906, Essex County, *Tyler,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion fully states the case.

*L. L. Hight* and *Harry B. Amey* for the defendant.

It was error to refuse to instruct the jury as to the meaning of proximate and remote cause. A person is responsible for only the natural and probable consequence of his acts, or such consequence as may be foreseen by a prudent man. Beach, Neg. §31; *McDonald* v. *Snelling,* 14 Allen 295; *Pollard* v. *M. C. R. R. Co.,* 87 Me. 51; 1 Thomp. Neg. §57.

*Herbert W. Blake* for the plaintiff.

The decision of the trial court as to the qualifications of an expert witness is not revisable, if there was any evidence to

sustain it. *Bemis* v. *R. R.*, 58 Vt. 636; *Wright* v. *Williams,* 47 Vt. 222; *Dale* v. *Johnson,* 50 N. H. 452; *Carpenter* v. *Corinth,* 58 Vt. 214; *Lewis* v. *Crane & Sons,* 78 Vt. 216; *Morrisette* v. *Railroad Co.,* 76 Vt. 273; *McGovern* v. *Hays & Smith,* 75 Vt. 104.

Although the burden is on plaintiff to prove that he exercised due care, he need not give affirmative evidence of that fact. It is enough that the circumstances justify that inference. *Quimby* v. *Central Vt. R. R.,* 23 Vt. 387; *Hill* v. *New Haven,* 37 Vt. 501; *Lazelle* v. *Newfane,* 69 Vt. 306; *Boyden* v. *R. R. Co.,* 72 Vt. 91; *LaFlam* v. *Missisquoi Pulp Co.,* 74 Vt. 136; Thomp. Neg. §4630.

On a motion by defendant for a directed verdict, the evidence must be viewed in the light most favorable to plaintiff. *Kilpatrick* v. *R. R. Co.,* 72 Vt. 263; *Worthington* v. *Cent. Vt. R. R.,* 64 Vt. 107.

Where the injury complained of results from the combined negligence of defendant and a fellow servant, plaintiff may prevail. *Hunn* v. *Mich. Cent.,* 41 A. & E. R. C. 452; *G. T. R. Co.* v. *Cummings,* 106 U. S. 700; *C. & N. W. R. Co.* v. *Sweet,* 45 Ill. 197; *Felton* v. *Harbison,* 104 Fed. 737.


HALL, Superior J.   The plaintiff at some time prior to the accident in question had worked for the defendant shoveling snow ten and one-half days, and at another time three or four days; this was all the experience he had in railroading; he had usually been employed in a mill or as a laborer.

On the 26th of January, 1906, he was employed by the defendant and worked shoveling coal, most of the time, from cars into the coal chute, until February 2, when he was ordered to go with one Boin to shovel part of a car of coal into the boiler house; he had been there for that purpose once before. The coal chute and boiler house were about 125 feet apart in the same yard.   In that part of the yard there were six tracks and four switches: No. 1—the northerly track or siding—led on a curve to the boiler house; Nos. 2, 3 and 4 led to an ash pit between the coal chute and boiler house; No. 5 led to the side of the coal chute where engines were coaled, and No. 6—the southerly track—up an inclined plane to where coal cars were unloaded into the chute.

Between the main tracks and tracks Nos. 1 and 2 there were three switches, numbered 1, 2 and 3 respectively; the distance from 1 to 2 was about 152 feet; from 2 to 3, 98 feet; 60 feet from No. 3 was located split switch No. 4 controlling the entrance upon tracks 1 and 2. Nearly opposite and about 10 feet from it was split switch No. 5 controlling the entrance upon tracks 3 and 4; the targets upon these switches were upon the northerly side.

The distance from split switch No. 4 to the foot of the incline, leading up to the coal chute, was about 40 or 50 feet; engines did not run up the incline; cars of coal were drawn up by means of a cable and there was only a narrow space on either side of the cars when on the trestle. It appeared that coal cars were about 35 feet long; that the platform was about 3 feet from the ground, and that the sides and ends were about 3 feet above the platform or floor of the car. On either end was a platform about 12 inches wide. The usual method of getting onto a car was by stepping on the brake-beam or upon a plank placed on the brake-beam, taking hold of the brake-rod and climbing up on the end of the car; the plaintiff's evidence tended to show that it was the only way to get on.

Track No. 1 was not only used for drawing coal to the boiler house, but as a storage track for cars of coal, and on the day of the accident there was part of a car of coal on the south side of the boiler house that had been there a day or two, and, easterly, and three or four feet from it, were five cars loaded with coal, some of which had been placed there that morning about 8 o'clock and before plaintiff and Boin arrived; the space between the car opposite the boiler house and the next one easterly was left so that the men could pass through and get into the door on the east end of the boiler house.

On the morning of the accident, about 8:30 plaintiff and Boin went to the boiler house, as directed, to unload the car that was partly full, standing beside the boiler house; they went through the space between the cars, through the east door, and opened the windows into which the coal was to be shoveled; they then returned to the car and got up over the end as they had done at the coal chute; Boin shoveled from the east end and plaintiff from the west end; it took about two hours to unload the car; when unloaded Boin got down over the east end, plaintiff went to the east end, and set down his pick and

shovel and got over on to the narrow platform (about 12 inches wide) on the end of the car; he then took out his pick and shovel and threw them on the ground and took hold of the brake handle, a little south of the center of the car, with his right hand; and the handle (grab iron) near the corner of the car (plaintiff testified that it was on the end of the car) with the other hand, facing towards the west, and attempted to get off on the south side; he put his right foot upon the draw bar so as to throw his body forward and enable him to reach the brake-beam with his left foot; the brake-beam was about one and one-half feet down, or half way to the ground, and 8 or 10 inches under the car; while in this position the collision hereinafter described occurred and plaintiff was caught; his right foot and leg were injured, necessitating amputation between the ankle and knee, and his left foot was injured, necessitating the amputation of part of the foot.

Plaintiff testified that he did not see any stirrup and did not know that there was one on the car; that he did not know that the draw-bar was constructed with a covered spring that let it back when the couplers came together; that he did not know what the dead wood was, and had never received any instructions or been cautioned to look out for danger; that he never saw any cars put on the boiler track and did not know there was any danger.

White, plaintiff's foreman, who directed him and Boin to go and unload the car, was on the engine at the time of the collision; he testified that he knew plaintiff and Boin were unloading the car and had seen them one or two minutes before, that if it was a dangerous place he would look after them, but he did not see any danger at the time and did not think it would happen.

The engine causing the collision was in charge of one Boulett, engine hostler for defendant, who was backing up from a point on track No. 5, intending to run the engine on track No. 2 to the ash pit to have its fires cleaned. He was on the south side, looking down towards the hind end and did not look to see how the switch target stood—"forgot it," he testified—and did not know where he was going until he was about three feet from the easterly car on the boiler house track; he then reversed the engine, but that did not prevent the collision which

caught plaintiff; when the engine stopped it was a little more than its length west of switch No. 4.

The yard foreman, who had worked for defendant about fourteen years and set the cars in on the boiler house track that morning, testified that he set switch No. 4 for the ash pit track when they came out. The evidence of the plaintiff tended to show that the employees of the defendant, who had a right to change the switch, had not done so between the time when the cars were placed there, and the switch set for the ash pit, and the time of the accident.

The switch was what is known as a Ramapo, and the defendant's evidence tended to show that it was as good as any made; there had been a lock on that switch until about eighteen months before, when it was discontinued; locks were used on some of the switches in the yard and had been in constant use by the defendant; it appeared that there was nothing impracticable in using a lock on that switch; plaintiff claimed that it might have been changed by a stranger, not employed by the defendant, and that it was negligence to leave it without a lock.

Witness Gleason testified that the day following the accident, or the next day after, he saw the switchmen with a split switch rail out near the foot of the incline that had a bent point.

Witness Dealand, an employee of the defendant, who did all kinds of work in the yard, testified that some time in February—he could not say whether before or after the accident—he worked on the switches and there was a point bent on one where the split switches were together. The plaintiff's evidence tended to show that the bent end of a split switch rail at No. 4, if set for the ash pit, might throw the engine onto the boiler house track.

Boulett had worked for the defendant nine years, the last five as engine hostler, and his work was perfectly satisfactory to his superiors, who regarded him qualified for his position, but he had never been examined nor furnished with a copy of defendant's rules, which provided, among other things, that enginemen "are required to observe the position of all switches and must know (so far as it is possible for them to do so) that such switches are right before passing over them"; also that "they must always keep a sharp lookout ahead, noting carefully the position of switches, semaphores and other signals, and also look back frequently to see that the train is intact."

He had seen the rules and been instructed to some extent by a former hostler. He had been quite deaf since he was thirteen, and his hearing was growing no better; he had never been examined.

Mr. Cobb, locomotive foreman for defendant, who examined engineers and firemen for defendant, testified that such examination covered, among other things, seeing, hearing and writing; that this was done for the protection of the public and fellow workmen.

The plaintiff's evidence tended to show that in passing over a switch there was a peculiar sound called a "click," and claimed that if Boulett failed to look at the target and could have heard this "click," it would have indicated to him the danger and prompted quicker action and avoided the collision.

Boulett testified that he knew he was on the switch, but that it was the first time the switch had been turned and the first time anything had happened; he had several engines in charge, daily, to clean and coal and was frequently on the tracks in the yard, but only occasionally upon the boiler house track.

The defendant contends that the court below erred in overruling the motion for a verdict, in admitting certain evidence of witness Kilpatrick, and in failing to give instructions to the jury relative to proximate and remote causes of the accident.

I. The motion for a verdict was based upon three grounds. *First:* that the plaintiff failed to establish negligence on the part of the defendant; *second:* that the plaintiff failed to show that he was free from contributory negligence, and *third:* that if plaintiff was free from negligence, the injury complained of was the result of a risk which he assumed.

1. The law is well settled in this State that if the evidence fairly tends to show negligence on the part of the defendant, that question must be submitted to the jury. Redfield, C. J., in *Barber* v. *Essex*, 27 Vt., p. 70, says: "Questions of negligence, where the law has settled no rule of diligence, can never be determined as matter of law—except where the testimony is all one way." *Palmer* v. *Village of St. Albans*, 56 Vt. 519. Numerous cases might be cited.

2. The law is equally well settled that if there are opposing inferences to be drawn from the evidence bearing upon the question of contributory negligence, as there clearly were in this

case, that question must be submitted to the jury. *Latremouville* v. *B. & M. R. R. Co.,* 63 Vt. 336, 22 Atl. 656; *Boyden* v. *Fitch. R. R. Co.,* 72 Vt. 91, 47 Atl. 409; *LaFlam* v. *Miss. Pulp Co.,* 74 Vt. 136, 52 Atl. 526; *Morrisette* v. *C. P. R. Co.,* 74 Vt. 232, 52 Atl. 520, and cases cited in the opinions.

3.   While it is the settled law of this State that an employee assumes the risks ordinarily incident to the business in which he is engaged, he does not assume an extraordinary risk, existing by the fault of his employer, unless he knows and comprehends it, or it was so plainly observable that he will be taken to have known and comprehended it. *Dunbar* v. *Central Vt. Ry. Co.,* 79 Vt. 474, 65 Atl. 528, and cases there cited. The evidence in this case tends to show that this was not a risk assumed by the plaintiff, and the question was therefore one for the jury. *LaFlam* v. *Miss. Pulp Co., supra.*

From a careful study of all the evidence, we are satisfied that, when considered in the light of the circumstances shown by the record, it was the duty of the court below to submit the case to the jury upon all the questions raised by the motion and that there was no error in so doing. *Gila. Valley, G. & N. Ry. Co.,* plaintiff in error, v. *Lyon,* 27 Sup. Ct. 145, opinion by Mr. Justice Peckham, filed Dec. 10, 1906; *Lily* v. *N. Y. Cen. & H. R. R. Co.,* 107 N. Y. 566, and cases cited in the opinions.

II.   One of the grounds of negligence complained of by plaintiff was that switch No. 4 was out of repair by reason of defendant's negligently permitting a split rail with a bent point, to remain in said switch, and that by reason thereof the engine ran in on track No. 1, causing the accident.

The record shows that witness Kilpatrick was asked by the plaintiff's attorney:

"Q.   In your experience, if a split switch, if one of these rails got bent in that manner away from its fellow, so that although the switch standard was right and an engine coming along, would it take the track that the switch was shut against, from your actual experience in the yard?"

"Plaintiff doesn't claim there is any difference in railroading in that particular now."

" (Court)—The burden would be upon the plaintiff to show that it is the same, in relation to what you call a split switch and nothing else." ·

Question admitted and exception allowed defendant.

"A.   It would either go off on the ground or go off on the other track."

When a question in issue involves special knowledge or skill and the opinion of a witness is asked, the trial court is the sole judge of the witness's qualifications to answer, if there is any evidence tending to show that he has knowledge or skill in respect of the matter under consideration.

In *Bemis* v. *Cen. Vt. Ry. Co.*, 58 Vt. page 641, 3 Atl. 534, Veazey, J., in applying the well recognized law upon the subject, says: "This is a question of fact, the decision of which by the trial court, as an inference from evidence is not revisable," and cites several authorities.

If the evidence was not before us we should assume that the finding was upon evidence, properly admitted, but the evidence is before us, and it fully justified the court in permitting the witness to give his opinion from his experience, and there was no error in the ruling of the court in that respect.

III.   This Court recognizes and applies the maxim *causa proxima, non remota spectatur* in cases calling for its application.

Rowell, J., in *Gleason* v. *Del. & Hud. Canal Co.*, 65 Vt. 213, on page 216, 26 Atl. 70, says: "It is the maxim of the law that the immediate, not the remote cause of an. event is regarded.   In the application of this maxim, the law rejects, as not constituting ground for action, damages not flowing proximately from the act complained of."

Among other requests to the court to charge the jury, defendant made the following: "7.   That if the jury find that the absence of a lock upon the switch-stand was negligence of the defendant, still this negligence was a cause remote, and not proximate; and the proximate cause was the negligence of the hostler in failing to observe the position of the switch, and this negligence, the proximate cause, being that of a fellow-servant, the plaintiff cannot recover."

The only exception taken to the refusal of the court to charge as requested was a general one and is not now urged, therefore we are not called to pass upon the soundness, in law, of this request.

At the close of the charge, the following special exception was noted: "The defendant also excepted to the failure or omission of the court in its charge to the jury to explain the

distinction between 'proximate' and 'remote' cause, and give the jury an opportunity to find, if they saw fit, that the absence of a lock on the switch was a remote cause, not a proximate cause, of the accident.''

If this was a case requiring the court to define proximate and remote causes and to apply the maxim of *causa proxima, non remota spectatur,* the court's attention was called to the subject both by the request and the exception, and it should have been done.

The defendant does not rely upon any exception to what the court said in the charge, but in considering the question as to whether the court erred in respect of the matter embraced in the last exception, it is necessary to consider what the court did say to the jury, and the way and manner in which the various issues were presented to the jury.

Among other instructions we find the following:

''In order that the plaintiff should recover a verdict at your hands, the law casts upon him the burden of showing you, proving to you, by a fair balance of the evidence in his favor that the defendant was guilty of negligence in respect to furnishing him with a safe place to work; and furthermore, that his own negligence did not contribute to the happening of the accident.''

After referring to the negligence of the engine hostler as that of a co-servant, the court said:

''Now, if that was the whole negligence that you find in the case, the defendant is not liable in this action, and the plaintiff is not entitled to recover.''

Later in the charge, referring to the negligence of the engine hostler, coupled with other negligence charged, the court instructed the jury that: ''If you find on the other hand that the negligence of the engineer combined with the negligence— or other negligence which is claimed by plaintiff, or either, happened to cause the accident, then you may find the defendant is liable, provided you find another element in the case in favor of the plaintiff to which I will call your attention.''

The ''other element'' referred to was that of contributory negligence, and the court, after defining it and stating that the burden was upon the plaintiff to show that he was free from contributory negligence, said: ''The law is, as counsel have

told you, if the plaintiff who asks to recover is guilty of any negligence on his part, he is not entitled to recover.''

From these excerpts from the charge, covering all that the court said relating to this particular subject, it will be seen that the court neither defined nor attempted to apply the maxim contended for by the defendant, but rather treated the negligence charged against the defendant, if found, as combining or concurring with the negligence of the engine hostler in causing the accident.

In returning a verdict of guilty, under the charge of the court, the jury must have found that the plaintiff was not guilty of contributory negligence.

In addition to the conceded negligence of Boulett, they must also have found that the accident was caused by the negligence of the defendant in entrusting the engine to Boulett, or in leaving a split rail in the switch with a bent point (if defendant did so leave it) or in allowing the switch to remain unlocked. Negligence on the part of the defendant in respect of one or more of these alleged acts or neglects, under the charge of the court, must have been found concurring with the negligence of the engine hostler, or the jury would not have returned a verdict against the defendant.

Upon the facts, just as they were presented on trial, was it the duty of the court to define and apply the rule as to direct or proximate and remote causes?

No question was made but what switch No. 4, controlling the entrance to track No. 1, where the accident occurred, was without a lock and had been for over a year. This must have been prominent in the minds of the jurors. If the failure to lock the switch had any part in causing the accident, can it be said to have been the proximate cause or a concurring cause so closely connected with the negligence of the engine hostler, in causal relation, that in legal effect it was proximate?

The defendant's counsel, in argument, admits, and all authorities agree that no general definition will apply to all cases.

Pierpont, J., in *Stickney* v. *Maidstone*, 30 Vt. 738, says on p. 741: ''The extent to which the first and proximate cause shall be said to operate, so as to procure direct and immediate results, must depend upon the peculiar circumstances of each particular case. It would be extremely difficult to lay down

any rule defining the precise line that divides the proximate from the remote cause, which would operate justly in all cases."

Webster defines proximate cause as "a cause which immediately precedes and causes the effect, as distinguished from the remote, mediate or predisposing cause," but this is, perhaps, too general for legal application.

Bouvier gives as one of the definitions, "the cause nearest in causation without any efficient concurring cause to produce the result may be considered the direct cause." It is often defined as "that which stands next in causal relation."

Mr. Justice Strong, in *M. & St. P. Ry. Co.* v. *Kellogg*, 94 U. S. 469, says that "the primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement."

Rowell, J., in *Morrisette* v. *Canadian Pacific R. R. Co.*, 74 Vt. 232, on pp. 242 and 243, discussing the subject of actionable negligence and proximate cause, says: "Its proximity has no necessary connection with continuity of space nor nearness of time, but only with that of which the result is the natural and probable consequence in the sense that a prudent man ought to have foreseen it. Hence in this class of cases the defendant's negligence is the proximate cause of the natural and probable consequences of it, and whether the result complained of in the concrete case is the natural and probable consequence of it, is a question for the jury, unless it is plain enough to be ruled as matter of law."

Munson, J., in *Corbin* v. *Grand Trunk Ry. Co.*, 78 Vt. 458, on pp. 461 and 462, 63 Atl. 138, says: "Generally, in cases of this class, the test of actionable negligence is whether the injury which followed the act or omission in question was a natural and probable consequence in the sense that a prudent man ought to have foreseen it."

These propositions are fully sustained by Cooley on Torts, p. 73; Beach on Contributory Negligence, §31; Thompson on Negligence, §57, and are not questioned.

If the unlocked switch had any part in causing the accident, under the circumstances of this case, it cannot be said as matter of law that it was the proximate cause; neither can it be said as matter of law that the defendant could have foreseen that

such an accident as the one shown by the record, would have resulted as the natural and probable consequence of the unlocked switch at No. 4.

If these propositions are sound, it follows that the questions should have been submitted to the jury, under proper instructions, which necessarily required the defining of proximate and remote causes.

The failure of the court to do so may have been prejudicial to the defendant. In any event, it had the right to have the matter passed upon by the jury under proper instructions.

We therefore hold that the court erred in not giving such instructions as the case fairly called for, upon this point, and that the last exception is well taken.

*Judgment reversed and cause remanded.*