STEPHEN S. PLACE *v.* GRAND TRUNK RAILWAY COMPANY.

October Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed January 21, 1909.

*Master and Servant—Injuries to Servant—Evidence—Cause of Accident—Conditions After Injury—Fellow Servant—Incompetency—Master's Negligence—Contributory Negligence —Question for Jury—Instructions—Servant's Knowledge of Danger.*

In a servant's action for injuries caused by a locomotive taking the wrong track and striking cars while plaintiff was between them, plaintiff claiming that this happened because of a bent switch point in the switch controlling that track which might have diverted the locomotive thereon, though the switch was set for another track, testimony was admissible that a day or two after the accident a bent switch point was taken either from the switch in question or from another near it, though the witness could not state from which, and no accident occurred at the other switch.

The admission of said evidence did not violate the rule prohibiting the admission of evidence of repairs after the accident to show antecedent negligence, as here such evidence was admitted to show the cause of the accident.

Evidence considered, and *held* that whether the locomotive was diverted to the track on which plaintiff was injured because the switch was set for that track, or because the switch point was bent, was a question for the jury.

As a general rule, evidence of repairs made after the accident is not admissible to show antecedent negligence.

A servant cannot recover from his master for injuries caused by the negligence of a fellow servant, unless the latter was incompetent, and that incompetency was known or should have been known by the master.

In a servant's action for injuries caused by a locomotive taking the wrong track and striking cars while plaintiff was between them, where plaintiff's evidence tended to show that the engineer, if he had not been deaf, would have discovered that he was on the wrong track in season to have prevented the accident, whether the engineer was incompetent, and if so, whether defendant knew or should have known it, *held* for the jury.

In a servant's action for injuries caused by a locomotive taking the wrong track and striking cars between which plaintiff was working, where defendant claimed that the locomotive was diverted to the wrong track because the switch had been changed, plaintiff was properly allowed to prove that the switch was not locked at the time, that the yard switches were usually locked, and that the switch in question had been locked until within a year, as tending to show negligence in not locking that switch.

On defendant's motion for a directed verdict for plaintiff's contributory negligence, the evidence should be considered in the light most favorable to plaintiff, and, if there is evidence tending to show that

he was exercising the care of a prudent man in the circumstances the motion should be denied.

Where the evidence relied on to show contributory negligence justifies opposing inferences, that question is for the jury.

In a servant's action for injuries caused by a locomotive taking the wrong track and striking cars while plaintiff was descending between them, whether plaintiff ought to have known of the danger and was negligent in descending between the cars in the circumstances *held* for the jury.

In a servant's action for injuries caused by a locomotive taking the wrong track and striking cars while plaintiff was descending between them, an instruction that, to find for plaintiff, the jury must find the existence of one of the acts of negligence charged, and that the plaintiff was not himself negligent, and did not know of the danger, was defective for not calling the jury's attention to plaintiff's situation and instructing that he was chargeable with knowledge of the danger, that, in the exercise of the care of a prudent man, he might have obtained, as well as with his actual knowledge thereof.

In a servant's action for injuries caused by a locomotive taking the wrong track and striking cars while plaintiff was descending between them, where evidence made it a question for the jury whether the plaintiff was negligent in going between the cars, a requested instruction that it was the duty of a prudent man to look for moving engines before going between cars in a railroad yard, and the failure to do so is negligence, was properly refused, as being in effect a motion for a verdict.

CASE for negligence. Plea, the general issue. Trial by jury at the October Term, 1907, Essex County, *Miles*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. This case has been once before in the Supreme Court. See 80 Vt. 196.

*L. L. Hight* and *H. B. Amey* for the defendant.

Plaintiff was guilty of contributory negligence in descending between the cars in the circumstances. *McGeary* v. *The Old Colony R. R.*, (R. I.) 41 Atl. 1007; *Benson* v. *N. Y., N. H. & H. R. R. Co.*, 59 Atl. 79; *Demers* v. *Deering*, (Me.) 44 Atl. 992.

"While there is some conflict upon the question, the undoubted weight of authority is to the effect that evidence that after the accident resulting in injury, the master took precautions against the recurrence, is not admissible to show negligence on his part." *Nally* v. *Hartford Carpet Co.,* 51 Conn. 524, 50 Am. Rep. 47; *Williams* v. *Norton,* 80 Vt. 1.

*H. W. Blake* for plaintiff.

The plaintiff had a right to act upon the theory that the defendant had provided a reasonably safe place in which to work, and would exercise reasonable care in maintaining the place reasonably safe. *Morrisette* v. *Can. Pac. R. R. Co.,* 74 Vt. 232; *LaFlam* v. *Missisquoi Pulp Co.,* 74 Vt. 136; Thompson on Negligence, § 4630.

Even though the fellow servant may have been negligent, it is well settled that the plaintiff may recover from the master if his injury resulted from the combined negligence of a fellow servant and the master. *Hunn* v. *Mich. Cent. R. R.,* 41 A. & E. R. C. 452; *G. T. R. Co.* v. *Cummings,* 106 U. S. 700; *C. & N. W. R. Co.* v. *Sweet,* 45 Ill. 197; *Felton* v. *Harbinson,* 104 Fed. 737.

The repairs on the switch made a day or two after the accident, by taking out the bent switch point tended to show the cause of the accident, and was admissible for that purpose. *Kent* v. *Lincoln,* 32 Vt. 591; *Walker* v. *Westfield,* 39 Vt. 246; *Cleaveland* v. *G. T. R.* 42 Vt. 449; *Hopkinson* v. *Central Vt. R. R.,* 66 Vt. 618.

TYLER, J.   The record shows that fifteen exceptions were taken by the defendant to the admission of evidence of which Nos. 3, 9, 10, 14 and 15 are waived; Nos. 1 and 2 are not insisted upon in the brief; Nos. 4, 5, 6, 7, 11 and 12 relate to the switch and are considered under one head in the brief.   Exceptions were also taken to the charge as given by the court and to his omission to charge.

The location of the tracks in the defendant's railroad yard at Island Pond is fully stated in the opinion in *Place* v. *Grand Trunk Ry. Co.,* 80 Vt. 196, 67 Atl. 545.

The northerly track, No. 1, was the boiler-house track, and it and No. 2 called in the trial the ash-pit track, were connected by a split switch.   No. 3 also led to the ash-pit which was situated between the coal chute and the boiler-house.   No. 5 led past

the coal chute, and No. 6 went upon it. There was a split switch in No. 3, about ten feet south of the other switch. These were the only split switches in that part of the yard.

An engine was being backed to the west on track No. 1, and Boulet, the hostler in charge, intended to go upon the ash-pit track No. 2, supposing that the switch was set for that track, but the engine continued upon track No. 1 and struck the first of a string of four or five coal cars that stood there, knocked them along the track, and caused the collision by which the plaintiff was injured, both feet being badly crushed.

The hostler was hard of hearing. The switch was equipped with a switch target which, the defendant's evidence tended to show, was set in a manner that indicated that the switch was placed to let the engine upon track No. 1.

The hostler did not look to see how the switch target was placed as he approached it with his engine. It was his duty to observe the position of the target, and if he had looked he could have seen it and, if it was set wrong, have avoided the collision. The switch-stand was not then equipped with a lock, though it had been till within six months or a year of the accident, and it was the defendant's custom to have locks upon similar switches in the yard.

The defendant's evidence tended to show that the engine took track No. 1 because the switch had been turned and was open for that track. It admitted that the accident was caused by the negligence of Boulet, and one ground of defense was that it was not responsible for the act of the plaintiff's fellow servant.

The plaintiff claimed that the negligence was the defendant's, and he introduced evidence from which he contended that if the switch was set for the ash-pit track, yet if the points to the switch rails were bent or broken, the engine might have gone upon track No. 1, though the switch was closed to that track. The defendant claimed that there was no evidence sufficiently definite to tend in any manner to prove that a bent or broken switch point existed at the time of the accident, and certainly none to identify it as the one in track No. 2.

1. The exceptions state that there was no evidence tending to show that the switch point was bent or broken, unless the testimony of certain witnesses tended to show it, which must be considered:

Martin Gleeson, a competent expert witness, testified that, in his opinion, if the switch was set for the ash-pit track, and the point of the switch was bent or broken, the engine would be as likely to go in on the boiler-house track as on the ash-pit track; that if several cars were passing along some would be likely to take one track and some the other.

Perry, the defendant's yard foreman, testified that he placed four or five coal cars on track No. 1 the forenoon of the accident; that there was one car on that track before; that the track would hold only five or six cars; that about eight o'clock that morning, after setting the cars on there, he turned the switch for the ash-pit track for which it was most commonly set, though the other track was sometimes used two or three times a day for storing coal cars; that the ash-pit track was used ten or twelve times a day, as engines went to the ash-pit to be cleared of ashes; that he had no knowledge of the switch being changed that morning before the accident; that section men were at work around there, but no one had authority to change it.

Boulet testified in substance as before stated: Moore, a fireman, testified that he was on the engine with Boulet at the time of the accident; that he turned the switch for the ash-pit track after the accident and that the engine then passed over it; that the switch rails and points were in good condition, not bent or broken; that section men were working around there that forenoon on the switches, but he could not say what ones; that he saw no one turn the switch and saw no one go on that track after Perry placed the coal cars on track No. 1.

Aldrich, a brakeman, testified that he and a fellow-workman were passing along tracks Nos. 1 and 2, a day or two after the accident, and saw section men at work upon one of the ash-pit switches, but he could not say which one; that they had taken up an old rail which had a bent or broken switch point and placed it on a car. Dennis Gleeson, a car repairer, was with Aldrich and testified as he did, that he saw men take a bent switch rail from one of the two switches, but he could not say which one.

The defendant's evidence tended to show that the switch rail at this switch was not bent or out of repair.

The defendant excepted to the introduction of all the evidence relating to a broken switch rail, and after its admission moved to have it struck from the record, which motion was

denied and the defendant excepted. It also excepted to the submission by the court to the jury of the question whether, upon the evidence, the plaintiff had made out his claim that there was a bent switch point in the switch in controversy. The defendant's contention is that the evidence did not point to the switch in question and that the jury were obliged to ''guess'' which switch it was that the workmen were repairing.

This evidence was introduced by the plaintiff as a part of his opening case as tending to establish the essential fact of the defendant's negligence. It was, in brief, that the engine went wrong, the plaintiff claiming for one cause, the defendant another; the plaintiff's evidence tended to show that if a switch rail point was bent or broken that might have been the cause although the switch was set for the ash-pit track; a bent or broken switch rail was taken from one of the two switches a day or two after the accident, but the witnesses could not say which one; no accident had occurred at switch No. 3. In these circumstances the evidence was admissible.

The defendant's claim about the collision may have been more probable than the plaintiff's, but the plaintiff's evidence tended to show that it happened by reason of an imperfect rail, therefore it became a question for the jury to decide.

2. It is the general rule that evidence of repairs made after an accident has occurred is incompetent to show antecedent negligence on the part of a railroad company. *Terre Haute etc. R. C.* v. *Clem,* 123 Ind. 15, 23 N. E. 965, 7 L. R. A. 588, 18 Am. St. Rep. 303; *Shinners* v. *Proprietors of Locks & Canals,* 154 Mass. 168, 28 N. E. 10, 12 L. R. A. 554, 26 Am. St. Rep. 226; *Dale* v. *Lack. & W. R. Co.* 73 N. Y. 468; *Columbia & P. S. R. Co.* v. *Hawthorne,* 144 U. S. 202, 12 Sup. Ct. 591, 36 L. ed. 405. But this rule does not apply to the present case. Here, an accident had happened and the question was, which of the two causes which the evidence tended to show existed was the more likely to have produced it. However clear it may have seemed to counsel or even to the court that it was caused by a misplaced switch, there was evidence tending to show another cause, so that it was the duty of the court to submit the question to the jury.

3. The plaintiff could not recover if the accident happened through the negligence of his fellow servant Boulet unless he was incompetent and the defendant knew or ought to have

known of his incompetency. The plaintiff claimed that Boulet was deaf and that his deafness would be likely to prevent his hearing the clicking sound caused by the engine in going over a switch. Boulet testified that he did not hear the click when the engine went over the switch, and that the first thing that apprised him that he was on the wrong track was the click of the wheel later as it passed over the frog; that he then looked up and saw where he was going. If he had heard the switch click he might have been forewarned and stopped his engine in time to avoid the collision. The defendant's evidence was that Boulet had been in its employ several years; that his deafness did not disqualify him for the performance of his duty, and that he was a competent hostler. Whether, upon all the evidence he was competent, and whether, if incompetent, the defendant knew it or ought to have known it, were questions of fact for the jury to decide.

4. It was clearly competent for the plaintiff to prove that there was no lock upon this switch; that until within a year it had been kept locked, and that locks were commonly used by the defendant upon similar switches in that yard. Upon the defendant's theory of the cause of the accident, the jury might have inferred that a lock would have prevented a misplacement of the switch. It was held in *Carrow* v. *Barre R. Co.,* 74 Vt. 176, 52 Atl. 537, which was an action for injuries received at a grade crossing, that evidence that there was no flagman at the crossing was admissible as a part of the surrounding circumstances, although the defendant was not bound to keep a flagman there. See *Smith* v. *C. V. R. Co.,* 80 Vt. 208, 67 Atl. 535.

5. When the plaintiff received the injury complained of he had been in the defendant's employment seven days shoveling coal, most of the time at the coal chute, loading tenders with coal. He had worked for the defendant in the railroad yard, shoveling snow, ten and a half days at one time and three or four days at another time, the last time about a week before he began shoveling coal, and the other about a week before that. When he shoveled snow he worked upon all the tracks in the Island Pond yard and helped clear out the switches. This seems to have been all of his experience in working about railroads, engines and freight cars. He had been a farmer except three years when he had worked in a print mill. He was fifty-seven

years old, five feet four inches in height, and for anything that appeared, a man of ordinary intelligence.

On the morning of Feb. 2, 1906, the plaintiff went, by direction of the defendant's foreman, White, from the coal chute, a distance of 75 to 100 feet, to the boiler-house, to assist in unloading a coal car that stood on track No. 1, called the boiler-house track. To reach that building he went north, crossing tracks Nos. 5, 4, 3, 2 and 1. The car to be unloaded stood near the building—some witnesses said from 12 to 18 inches; others, from 18 to 26 inches. The east end of the building and the east end of the car were about on a line.

A string of four or five loaded coal cars was standing on track No. 1, the one at the west end then being three or four feet from the car that was to be unloaded. It appeared that this space had generally been kept open, sometimes fifteen feet wide, so that the defendant's workmen could pass through as they had occasion to go to the boiler-house. It was also used by them in wheeling cinders from the boiler-house.

On this occasion the plaintiff and a fellow workman, Boin, passed through this space between the cars, entered the building by a door at its east end, which was the usual place of entrance, opened the windows through which the coal was to be shoveled and then went out and climbed upon the car at its east end. The plaintiff unloaded the west end and Boin the east end. When it was unloaded Boin got down over the east end and went into the boiler-house. The plaintiff took his pick and shovel and walked in the car to its east end to go down where he went up. He set his tools down inside the car, climbed up to the platform or shelf, reached back and got his tools and threw them over upon the ground and began to descend towards the space between the cars. The plaintiff described the accident as follows: * * * "when I was climbing down I put my foot on the draw-iron to reach down to get onto the brake-beam with the other foot to step down, and just as I had got my foot placed the engine came along and collided with three or four cars that were in front and shoved them up onto the one that I was getting off from." Further on he testified: "When I got over onto the platform, the shelf, I turned then to step down." * * * "Had my right hand on the brake-rod and the other hold of the handle at the end of the car." * * * "One foot was placed on the draw-iron, and the other one I don't know exactly

where it was." He testified that he was attempting to put it onto the brake-beam, which he said was a foot and a half below the platform and went in under it eight or ten inches,—under the end of the car. In answer to questions he testified that the brakerod was pretty near the center of the end of the car. * * * "right on the side of the draw-iron;" that what he took hold of was the handle fastened on the end of the car, sometimes called the grab-iron; that this handle "was on the end of the car right down close to the side;" that the grab-iron was placed horizontally on the car; that he placed his right foot on the draw-bar and was attempting to place the other on the brake-beam so as to step down; that he did not know that there was a spring in the draw-bar that allowed it to shut in or pull out. He further testified that he had no notice or knowledge that cars were likely to shunt on that track.

On cross-examination the plaintiff testified that he knew that track No. 1 was used for the storage of coal cars; that he saw this string of cars on the track when he went to work that morning; that no others were placed there while he was there at work; that in climbing upon the car from the passage-way he put his foot upon the brake-beam and his knee up on the shelf and did not use the draw-head.

Upon being recalled the plaintiff testified that he had no knowledge that the point of the split switch was bent or broken, and that he had no knowledge that it had no lock upon it; that if any cars had been placed upon the track while he was upon the car he should have known it by the noise, and that a switchman would have been there motioning; that the coal upon some of the cars was piled up higher than the body of the car so as to obstruct his view in that direction; also, that in getting down from the car he looked for a stirrup and found none.

The defendant's evidence tended to show that there were stirrups and handles on all four corners of the car and in perfect condition. Except as a convenience to himself in sooner reaching the passage there was no apparent reason why the plaintiff should not have got down at the southwest corner of the car and walked along the south side of it to the passage. It is not clear that he could have got down on the north side and reached the door by going between the car and the building, as the space was narrow.

The plaintiff admitted on cross-examination that he had observed the movement of cars and engines upon the tracks in the vicinity, the method of coupling cars and engines and the liability of freight cars to be knocked along the track when struck by an engine, and knew that the draw-heads were liable to come together with a strong impact.

The morning of the accident was bright and clear. The plaintiff's car stood at the west end of the track, so that danger could only come from the other direction, yet for convenience in descending he turned his back to the east. He denied seeing the engine upon that track and his evidence tended to show that coal was loaded so high upon some of the cars that were standing there that he could not have seen an engine coming down the boiler-house track.

At the close of all the evidence the defendant moved for the direction of a verdict upon the ground of the plaintiff's contributory negligence. In deciding this motion it was the duty of the court to consider the evidence in the light most favorable to the plaintiff. If there was evidence tending to show that he was in the exercise of the care and prudence of a prudent man, under like circumstances, the motion could not be granted. *Boyden, Admr.* v. *Fitchburg Ry. Co.,* 72 Vt. 89, 47 Atl. 409, and cases cited in the opinion. This has long been the settled rule of law.

The plaintiff's experience in working upon and about engines and freight cars; the fact that the passage was generally kept open and that the plaintiff was attempting to reach it when he was descending from the car; that this was the most direct and the usual way to reach the building which his duty required him to enter to close the windows; that the string of coal cars had stood there two hours or more, with no engine attached and with no warning or sign that they were about to move; the time it would take him to descend, were all matters for the consideration of the jury. If coal was piled so high upon some of the coal cars that he could not have seen the approaching engine as he turned his face to the west to facilitate the act of getting down, it could not be held as matter of law that that act was negligent. Whether he could have seen it was a controverted question. If he had seen or could have seen it when it was east of the switch, it was for the jury to say whether he should have watched it and discovered which track

it took at the switch, no warning or signal being given to him. Engines were constantly going to the ash-pit to be cleaned; they went less frequently onto track No. 1. If he could have seen the switch, the evidence does not make it clear that he could have told which track the engine had taken. The circumstances attending the accidental passing of the engine onto the boiler-house track were somewhat different from what they were when an engine was sent there to remove a coal car.

The rule was correctly stated in *Place* v. *Grand Trunk R. Co.,* 80 Vt. 196, 67 Atl. 545: * * * "if there are opposing inferences to be drawn from the evidence bearing upon the question of contributory negligence, * * * that question must be submitted to the jury." See cases cited in the opinion.

It cannot be held as a matter of law, that, in the circumstances of the case, the plaintiff had or was chargeable with such knowledge of danger that he was guilty of contributory negligence in attempting to descend from the car. It was for the jury to say whether he reasonably ought to have known of the danger attending the act. Our cases upon this point are so numerous, and several are so recent, that it is not necessary to restate them. The leading ones are cited in the opinion in this case when it was here before.

This case is unlike *Latremoille* v. *B. & R. Ry. Co.,* 63 Vt. 336, 22 Atl. 656, where the plaintiff was an experienced car inspector and knew, when he went under the car to repair it, the danger of cars being shunted against his car. No one connected with defendant company knew of that danger better than he did. The case is also unlike the Magoon case. The motion to direct a verdict was properly denied.

6. The defendant contends that there was error in the charge in omitting full instructions upon the subject of contributory negligence. The court carefully pointed out to the jury the three claims made by the plaintiff of the defendant's negligence—the want of a lock upon the switch, a switch rail out of repair, and the hostler's incompetency; that to entitle the plaintiff to recover they must find one or more of these claims sustained; that the negligence found was the proximate cause of the accident, that the plaintiff was not guilty of contributory negligence, and that he did not know of the danger. In the dis-

cussion of each of these claims of negligence the instruction was that if the jury found them or either of them made out the plaintiff was entitled to recover unless he knew of the danger, omitting the usual instruction, "or he ought to have known and comprehended it."

It was manifestly an important question of fact for the jury to decide whether or not the plaintiff was guilty of contributory negligence in descending from the car in the manner testified to by him, yet the court gave the jury no specific instruction upon this branch of the case. The charge must be held inadequate in that the attention of the jury was not called to the situation in which the plaintiff placed himself and to the degree of care and prudence that he was bound to exercise in view of the danger. He was chargeable with knowledge of the danger that in the exercise of the care of a prudent man he might have obtained as well as with the knowledge that he actually possessed, and the jury should have been so instructed to enable them to determine whether or not the plaintiff was guilty of contributory negligence. Without such instruction they might well have understood that the plaintiff was chargeable only with knowledge of the danger that he saw and not with knowledge of the danger that he might have seen by the exercise of the requisite degree of care.

7. The sixth request to charge was: "That the duty to look about for moving engines and cars before putting himself between two cars in a railroad yard in such a way that he would be crushed if the cars came together, is the duty of any ordinary prudent man, and a failure to so look is negligence as a matter of law." This was in effect a motion for a verdict and has already been considered.

*Judgment reversed and cause remanded.*