ARTHUR YARDLEY *v.* RUTLAND RAILROAD CO.
and
ABE RUSKIN *v.* RUTLAND RAILROAD CO.

October Term, 1930.

Present: POWERS, C. J., SLACK, MOULTON, WILLCOX, and THOMPSON, JJ.

Opinion filed January 7, 1931.

184

*Edward H. Holden, Francis E. Morrisey,* and *Norton Barber* for the plaintiffs.

*Frank C. Archibald* and *Edwin W. Lawrence* for the defendant.

SLACK, J. Arthur Yardley drove an automobile which he hired from Abe Ruskin against one of defendant's freight cars that stood on a grade crossing of the latter's railroad. Yardley sustained personal injuries, and the automobile was badly damaged. Each party brought an action against the defendant predicated upon its negligence; Yardley to recover for his injuries, and Ruskin to recover for the damage to his automobile. The negligence relied upon was the same in both cases, the same counsel represented the respective parties in both, they were pending in the same court, and were ripe for trial. The trial court of its own motion ordered them tried together, to which each plaintiff excepted. These exceptions present the first question for review.

These cases were not consolidated, but were simply tried together, and a separate judgment entered in each. This is spoken of in some of the cases as a consolidation. So, too, is the procedure under the so-called "consolidation rule" introduced into the English courts in the time of Lord Mansfield under which in certain instances a stay of proceedings was ordered in all but one of several cases, and the result reached in that case was made the basis for the disposition of the others. The failure to distinguish between these methods of procedure, neither of which, strictly speaking, is a consolidation, and actual consolidation, where several suits are merged and thereafter proceed to judgment as a single action, is doubtless responsible for some of the conflict found in the cases. Then, too, the procedure in the federal and many of the state courts respecting consolidation and the trial of several actions together is regulated by statute, which leads to still further confusion. The result is that no universal, or general, rule is deducible from the authorities.

■ ■ Independent of statutory authority, courts of general jurisdiction have inherent power to consolidate different causes, or order them tried together, when the circumstances authorize such course; and unless otherwise provided by statute, questions respecting such procedure are addressed to the discretion of the trial court, and its action will not be revised unless an abuse of discretion clearly appears.

The rule respecting *actual* consolidation is stated thus in Corpus Juris, vol. I, p. 1124, par. 318: "Unless otherwise provided by statute, the conditions ordinarily prescribed as authorizing, and essential to authorize, a consolidation of actions at law are that the different actions shall be pending in the same court at the same time, between the same parties, and involving substantially the same subject matter, issues, and defenses."

But in most jurisdictions the requirement that the parties be the same does not obtain where several cases are merely tried together. In some states this condition is done away with by statute similar in effect to the federal statute which provides that, "when causes of a like nature or relative to the same question are pending before a court of the United States, or of a Territory, the court may make such orders," etc. (see *Mutual Life Ins. Co.* v. *Hillmon,* 145 U. S. 285, 36 L. ed. 706, 12 Sup. Ct. 909, and *St. Louis I. M. & S. Ry. Co.* v. *Harden,* 83 Ark.

255, 103 S. W. 614, and in others it is regarded as unessential in the absence of statutory elimination. The rule in Massachusetts, where there is no statute regarding the matter, is stated by Rugg, C. J., in *Lumiansky* v. *Tessier*, 213 Mass. 182, 99 N. E. 1051, 1054, Ann. Cas. 1913E, 1049, thus: ''Where several causes are pending between the same or different parties which grow out of a single transaction or which involve an inquiry into the same event in its general aspects, although the details of evidence may vary materially in fixing responsibility, the court may order them tried together. But they continue separate so far as concerns docket entries, verdicts, judgments and all aspects save only the one of joint trial.'' See *Bradford* v. *Boston & Maine Railroad*, 225 Mass. 129, 113 N. E. 1042; *Sullivan* v. *Boston Electric Light Co.*, 181 Mass. 294, 63 N. E. 904; *Springfield* v. *Sleeper*, 115 Mass. 587; *Witherlee* v. *Ocean Ins. Co.*, 24 Pick. (Mass.) 67; *Azinger* v. *Penn. Railroad Co.*, 262 Pa. 242, 105 Atl. 87; *Reid* v. *Nichols*, 166 Ky. 423, 179 S. W. 440; *Benge's Admr.* v. *Fouts*, 163 Ky. 796, 174 S. W. 510; *St. Louis I. M. & S. Ry. Co.* v. *Harden, supra.* In *Bradford* v. *Boston & Maine Railroad* and *Azinger* v. *Penn. Railroad Co.*, the plaintiffs were different in the cases tried together, and they were the ones who challenged the court's action, but without avail.

It is clearly apparent that the reason for requiring the parties to be the same in causes actually consolidated does not exist where causes are simply tried together, but in all other respects retain their identity.

A careful examination of the question satisfies us that the court did not err in trying these cases together. They grew out of the same accident, and, so far as the defendant's negligence was concerned, depended upon precisely the same evidence. While the question of Yardley's contributory negligence was involved in his case, or might be, and was not in the other, that issue was so clean cut that it is not apparent how Ruskin could have been harmed by a joint trial if that matter was properly dealt with by the court, and Yardley certainly could not have been. A situation somewhat similar in principle arose in *State* v. *Fournier and Cox*, 68 Vt. 262, 35 Atl. 178, where it was held that Fournier, who was jointly indicted with Cox for murder, was not entitled, as a matter of right, to a separate trial because evidence was likely to be introduced against Cox which

it was claimed would be highly prejudicial to Fournier. See, also, *State* v. *Meeker*, 54 Vt. 112.

At the close of the plaintiffs' evidence the defendant moved for a directed verdict in each case, which motion was granted, and each plaintiff excepted.

The grounds of the motion in the Yardley case were that the evidence failed to show negligence on the part of the defendant and did show negligence on the part of Yardley. The motion in the Ruskin case was predicated solely upon the lack of evidence tending to show negligence on the part of the defendant.

We first consider whether the evidence, viewed in the light most favorable to the plaintiffs, tended to show that the defendant was guilty of actionable negligence. The material facts which the evidence tended to prove are these: The highway, at the place where the accident occurred, crosses the railroad at a right angle, the former runs east and west, and the latter runs north and south. A northbound milk train on defendant's road broke apart, without any claimed fault or neglect of the defendant, and left the rear section standing on the crossing, about 3.30 o'clock on the morning of January 17, 1928. It had been there four to five minutes when Yardley who approached the crossing from the west struck it. The highway for several hundred feet west of the crossing is straight and descends slightly toward the latter point. The surface of the highway in that vicinity is very dark. It had snowed the previous evening so that the highway looked "spotty" as one witness termed it— white in some places and dark in others. The car that Yardley hit and some, perhaps all, of the others in the train were painted dark green. There was no light on the car he hit, or any other part of the train, except in the locomotives which were five to six hundred feet north of the crossing, and in the coach which was a little more than six hundred feet south of the crossing.

There was a proper warning sign east of the track, but the train hid it from Yardley's view. There was no light, guard, or warning of any kind at the crossing to warn people of the presence of the train thereon.

Yardley testified that the lights on his car would show objects one hundred and fifty feet ahead of the car; that he was on the lookout "generally" to see that the road was clear; that

when he was "something over a hundred feet, might have been a hundred and fifty" from the crossing he saw what he thought was a clear spot in the road which turned out to be the train; that when about thirty feet from the crossing he discovered that what he thought was a clear spot was in fact a freight car; that he applied his brakes as soon as he could "collect" himself, which was "practically immediately but not absolutely"; that he was then traveling from twenty to twenty-five miles an hour, and slowed to five or six miles an hour before he hit the train (although his car was completely wrecked); and that his car was equipped with four-wheel brakes and when running from twenty to twenty-five miles an hour could be stopped in twenty feet.

The declaration alleges in effect that because of the time of night, the conditions at the crossing, namely, the color of defendant's cars, the dark spots in the highway and Yardley's inability to see the warning sign, and his lack of knowledge concerning that section of the highway, it became and was the defendant's duty to maintain lights, guards or other devices at the crossing to warn travelers on the highway, and Yardley in particular, of the presence of the train at that point, and that it carelessly and negligently failed to perform such duty. This is the only legal shortage complained of.

■■ It is not apparent wherein these cases are essentially different from *Gallagher* v. *Mont. & Wells River R. R.*, 100 Vt. 299, 137 Atl. 207, 52 A. L. R. 744, and the cases there cited. In short, the law of those cases is, that aside from statutory requirements, the care and diligence required of a railroad company in the lawful occupation of grade crossings with its trains is to be measured by the care and diligence which it has the right to assume will be exercised by travelers on the highway; and that it has the right to assume that a traveler on the highway, who is in the exercise of due care and diligence, will adopt such rate of speed as will enable him to stop his car within the distance that he can plainly see the train. In other words that he will govern his speed by the condition of his lights and his ability to stop his car.

To be sure, as is suggested by the plaintiff, in the Gallagher Case the train was in motion while here it was at a standstill, but this difference does not affect the situation, in the circumstances. For aught that appears, or is claimed, the train in

the instant case was at a standstill because of an unavoidable accident, which the trainmen promptly discovered and took immediate steps to remedy.

As soon as the forward section of the train stopped the engineer took a torch and the conductor and a brakeman each took a lighted lantern and started back toward the crossing a distance, as we have seen, of from five to six hundred feet, and had covered about two-thirds of this distance when Yardley hit the train. No claim is made but that the trainmen acted expeditiously.

■ ■ It is urged that since the color of the cars and the highway was so nearly the same that "one merged or blended into the other," it was the duty of the defendant to provide some kind of a warning at this crossing. This similarity in color would have been the same had the train been in motion. Unless it is the duty of a railroad to provide a warning whenever a dark-colored car passes over a crossing in the summer when the highway is bare, and consequently dark, and whenever a light-colored car passes over a crossing in the winter when the highway is covered with snow, it is not apparent how the defendant was at fault, in this respect. The law, of course, imposes no such duty. It is a matter of common knowledge that freight cars are not all of the same color, and the traveler is presumed to act in the light of such knowledge.

■ The fact that the train hid the warning sign from Yardley's view is immaterial since the train itself was notice of its presence on the crossing.

■ It is argued that the trainmen might have sounded the whistle or rung the bell on the locomotives that stood five to six hundred feet north of the crossing. They might have done the same thing in the Gallagher Case until the train had cleared the crossing. The trouble is the plaintiffs fail to recognize the fact that if a train is lawfully on a crossing it makes no difference whether it is moving or standing still; and that in either case the train itself is a warning of danger which the railroad may assume the traveler will approach with the caution indicated in the Gallagher Case.

More need not be said respecting the defendant's negligence since it must be apparent that the law of the Gallagher Case precludes a recovery in these cases. In this situation, the question of Yardley's negligence in his case need not be considered.

The plaintiffs offered to show that following the collision one of the trainmen said, "I think we had better put a light on the other side of the train so nobody else will hit us." Assuming, but not deciding, that the railroad would be chargeable with this man's utterances, this evidence was properly excluded for the reasons stated in *Place* v. *Grand Trunk Railroad*, 82 Vt. at p. 48, 71 Atl. 836; *Terre Haute, etc., R. Co.* v. *Clem*, 123 Ind. 15, 23 N. E. 965, 7 L. R. A. 588, 18 A. S. R. 303; *Shinners* v. *Proprietors of Locks & Canals*, 154 Mass. 168, 28 N. E. 10, 12 L. R. A. 554, 26 A. S. R. 226; *Columbia & P. S. R. Co.* v. *Hawthorne*, 144 U. S. 202, 36 L. ed. 405, 12 Sup. Ct. 405.

The plaintiff offered to show by Yardley that another trainman said to him shortly after the collision: "By George, young fellow, I saw your car coming down the line and I said by gorra he is going to hit this train," for the purpose of showing that the train crew knew the situation and the danger.

Even so, this evidence had no tendency whatever to show a shortage of legal duty on the part of the defendant, and was properly excluded.

*Judgment affirmed in each case.*