SAMUEL R. SAVAGE, PLAINTIFF-RESPONDENT, v. PUBLIC SERVICE RAILWAY COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Submitted March 27, 1916—Decided November 20, 1916.

Plaintiff drove an automobile at a speed of fifteen miles an hour in a heavy snowstorm on trolley tracks covered with about two feet of snow on a two per cent. down grade, that is, a vertical drop of two feet in every one hundred lineal feet, with snow beating in his eyes through a slight opening in the windshield, which permitted him to see no farther than twenty-five feet ahead, know-

ing that a trolley car was likely to approach him head-on from the opposite direction, and which he was looking for; which automobile, so then and there traveling, it appears, could not be stopped within forty-five feet, although he himself did not know within what distance he could have stopped it—when a trolley car appeared within the range of his vision, so limited, coming toward him at a speed of eight miles an hour, without giving any audible signal, and with which he collided, notwithstanding he did what he could to stop his automobile by working the clutch and brakes; and, as a result of the collision, his automobile was damaged and he himself was injured. *Held*, that plaintiff was guilty of contributory negligence, and, therefore, not entitled to recover.

On appeal from the Supreme Court.

For the appellant, *Lefferts S. Hoffman, Leonard J. Tynan* and *Joseph Coult, Jr.*

For the respondent, *John Boyd Avis.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The plaintiff-respondent was injured in a head-on collision between his automobile and a trolley car of the defendant-appellant. The case was tried at circuit before judge and jury, and resulted in a verdict in the plaintiff's favor. At the close of plaintiff's case a motion to nonsuit was made and denied, and after the defendant's proof was put in a motion to direct a verdict for the defendant was made and overruled. After judgment was entered on the verdict an appeal was taken to this court.

The grounds of appeal are five in number, but only two were relied upon by the appellant. They were (3) because the trial court, although requested so to do, at the close of the whole case, refused to direct a verdict in favor of the defendant on the ground that no negligence on its part was disclosed, and (4) because the trial court, although requested so to do, at the close of the whole case, refused to direct a verdict in favor of the defendant on the ground that the plaintiff was clearly guilty of negligence that contributed to the happening of the accident.

We think the trial judge committed error in refusing to direct a verdict for the defendant on the ground of the plaintiff's contributory negligence, and although the question of defendant's negligence was argued in the briefs of counsel, we find upon inspection of the record that the point was not made, or rather having been raised on the motion to nonsuit, it was on the argument of that motion abandoned, and the motion to direct a verdict was rested on the single ground to which the motion to nonsuit was narrowed. Therefore, the question as to whether the defendant company, through the conduct of its motorman, was negligent, is not before us for decision, but even if it were, and if decided adversely to the defendant, the plaintiff's contributory negligence would still be a disposing factor in the case and would require a reversal.

The pertinent facts shortly, were these: The plaintiff, a truck-farmer, living at a place called Fairview, was in Woodbury on a certain day with his automobile. A severe snowstorm was raging and he procured enough rope to wrap both the rear tires. He had no chains with him. The ropes were put on, he says, so that he would have better protection from skidding, although it appears they were practically valueless for the purpose. He started out Cooper street, Woodbury, about one o'clock P. M. He was alone. As he was going out Cooper street, snow was lying about six inches to a foot deep until he got past a certain country club where it was drifting and was as much as two feet deep, and two and a half on the side where wagons and automobiles were accustomed to go. On the side not used by the trolley tracks there were telephone and trolley poles and a ditch along the road. This, he says, led him to take to the tracks. There appears to have been only a single track at the point where the accident happened. The plaintiff was on the right hand side going out; his reason for being in the trolley tracks was, he says, the presence of the telephone and trolley poles and ditch on the other side. He admitted he was running at a speed of fifteen miles an hour. He looked out through a slight opening in the windshield, but the snow was beating in his eyes.

He had to stoop down a trifle to see out. If he had opened the windshield all the way he could have seen out, but he said he was under the impression that that would let in more snow than he could see through. Suddenly a trolley car came in sight about twenty or twenty-five feet in front of him. He had not heard any signal of bell or whistle. The wind was blowing toward him and away from the car. He did what he could to stop his automobile by working the clutch and brakes, and had slowed up but did not come to a standstill. The trolley car was moving, but he could not see whether faster or slower than he. Another object he had in taking to the trolley tracks was to prevent skidding, as it is not easy to slide out of them; it being pretty hard to get out of wet trolley tracks after one gets in them. He had used the road often before and the tracks when it was necessary. He was going down hill at the time of the accident, the grade of which he was unable to state. The trolley car came into the road from a turn and had run at least one hundred and thirty-nine feet in a straight line toward him before the collision, but he did not see it because it was snowing so heavily, although he was looking for it. He did not know within what distance he could stop his automobile in that snowstorm. He said he was in a dangerous place and knew he was likely to meet a trolley car coming in the opposite direction and he could not see more than twenty to twenty-five feet ahead as he was going down a hill. He had a horn on the automobile for giving warning, but did not blow it. He said the trolley car gave no audible signal.

Witnesses called by the plaintiff corroborated him as to the trolley car giving no audible signal; also that it was running at a moderate rate of speed, about eight miles an hour.

For the defendant it was proved that there was a two per cent. down grade at the point where the accident occurred, that is, a vertical drop of two feet in every one hundred lineal feet. One witness who had experience in driving the same kind of automobile that the plaintiff owned, and which was injured by the collision, testified that under the conditions existing at the time of the accident, the automobile could not

have been stopped under fifty feet. Another witness said forty-five to sixty feet.

Now, as no question of the defendant's negligence resides in the record before us, it is only necessary to consider and decide whether the plaintiff—driving an automobile at a speed of fifteen miles an hour in a heavy snowstorm on trolley tracks covered with about two feet of snow on a two per cent. down grade, that is, a vertical drop of two feet in every one hundred lineal feet, with snow beating in his eyes through a slight opening in the windshield which permitted him to see no farther than twenty-five feet ahead, knowing that a trolley car was likely to approach him head-on from the opposite direction, and which he was looking for, which automobile, so then and there traveling, it appears could not be stopped within forty-five feet, although he himself did not know within what distance he could have stopped it when a trolley car appeared within the range of his vision, so limited, coming toward him at a speed of eight miles an hour without giving any audible signal, and with which he collided, notwithstanding he did what he could to stop his automobile by working the clutch and brakes, and his automobile was damaged and he himself injured—exercised reasonable care for his own safety. We are of opinion that he did not.

The automobile, as stated, was traveling at approximately fifteen miles an hour and the trolley car at eight, resulting in the two vehicles approaching one another at the rate of twenty-three miles an hour, at which rate of speed it would take them, after the plaintiff saw the trolley car, about three-quarters of a second to cover the distance of about twenty-five feet and come together in collision. In this twenty-five feet, considering the disparity in speed between the two vehicles, the automobile traversed about seventeen feet and the trolley car about eight. As according to testimony, the plaintiff could not have stopped the automobile within the whole distance of twenty-five feet, which conclusively appears, then, even if the trolley car had been at a standstill, the accident would nevertheless have happened.

The trolley car could not have left the tracks. It was en-

titled to the right of way. *North Hudson County Railroad Co.* v. *Isley,* 49 *N. J. L.* 468. The plaintiff, who expected to meet it, should have been in a position to turn out of the tracks when he did meet it. As he could see no more than twenty-five feet ahead of him, and as according to his own statement, he took to the tracks to prevent skidding as it was not easy to slide out of them, it is not perceived but that upon the slightest reflection, he must have known that it was quite impossible for him to avoid a collision with a car which he expected to meet coming head-on from the opposite direction.

The question of contributory negligence on the part of the plaintiff, it is urged in his behalf, was a question for the jury, and this contention is supported by citation of cases which deal with disputed questions of fact relating to contributory negligence, and those which hold that where the question of contributory negligence is in doubt, or where it is possible to draw different inferences as to it, the question is for the jury. The doctrine here invoked has no application to the facts of the case at bar, for when it was rested in the trial court, there were no disputed questions of fact, and on the facts the plaintiff's contribution of negligence—but for which the accident would not have happened—was all apparent. It is only when the question of contributory negligence is placed in the realm of uncertainty and doubt, and presents the form of a debatable question that its solution is committed to a jury. *Munroe* v. *Pennsylvania Railroad Co.,* 85 *N. J. L.* 688, 692; *affirmed, S. C.,* 87 *Id.* 701.

The requested direction of a verdict for the defendant should have been granted, and because it was not, the judgment must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 15.