HENRY S. PARKER, ADMR. *v.* BURTON F. SMITH.

Special Term at Rutland, November, 1926.

Present:   WATSON, C. J., POWERS, SLACK, FISH, and MOULTON, JJ.

Opinion filed January 6, 1927.

*Contributory Negligence—Burden of Proof—Jury Question—Proximate Cause—Sufficiency of Evidence To Support Inference That Pedestrian Had Looked Before Crossing Street —Weight of Evidence for Jury—Duty of Pedestrian To Exercise Due Diligence.*

1. Contributory negligence is ordinarily question for jury, where law has settled no rule of diligence, and can only be ruled as matter of law where material facts are undisputed and so conclusive that but one reasonable deduction can be drawn therefrom.

2. In action of tort against driver of automobile for death of pedestrian, plaintiff's intestate, who, while crossing street was struck by defendant's automobile, although defendant admits his own negligence, burden is still on plaintiff to show freedom from negligence on part of deceased.

3. Question whether plaintiff's intestate at time he started to cross street, could have seen defendant's automobile had he looked, *held* for jury, in view of evidence as to speed of defendant's car.

4. If plaintiff's intestate, when starting to cross street, could not. if he had looked, have seen defendant's automobile, his failure to look at that point could in no sense be proximate cause of accident in which he was struck and killed by defendant's car.

5. Evidence *held* to fairly and reasonably support inference that plaintiff's intestate looked, when starting to cross street.

6. Credibility of evidence as to position of pedestrian, plaintiff's intestate, at time of accident, and distance he traveled after having his leg fractured by being struck by defendant's automobile, *held* for jury.

7. In action of tort against driver of automobile for death of pedestrian, plaintiff's intestate, who, while crossing street, was struck by defendant's automobile, question of contributory negligence *held* for jury.

8. Pedestrian crossing street must exercise due diligence to avoid injury.

ACTION OF TORT to recover damages for death of plaintiff's intestate, as a result of an automobile accident. Plea, general issue. Trial by jury at the March Term, 1926, Rutland County, *Graham, J.*, presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Affirmed.*

*Charles E. Novak* and *Lawrence, Stafford & Bloomer* for the defendant.

*Jones & Jones* for the plaintiff.

SLACK, J.   On November 9, 1925, plaintiff's intestate was struck by an automobile owned and operated by defendant, and received injuries from which he died thirteen days later.   The action is predicated upon the alleged negligence of defendant in operating such automobile.   The only question for review is whether the evidence made a case for the jury on the issue of deceased's contributory negligence, which is raised by exception to the denial of defendant's motion for a directed verdict.

[1]   Contributory negligence, like negligence, is ordinarily a question for the jury, where the law has settled no rule of diligence, and can only be ruled as a matter of law when the material facts are undisputed, and are so conclusive that but one reasonable deduction can be drawn therefrom.   *Sharby* v. *Town of Fletcher*, 98 Vt. 273, and cases collected at p. 279, 127 Atl. 300.

The accident occurred on Church Street, in the city of Rutland.   That street, the southerly end of which intersects the northerly side of West Street, and Wales Street, the northerly end of which intersects the southerly side of West Street opposite the intersection of Church Street, form a continuous thoroughfare in said city running approximately north and south.   West Street runs due east and west, or nearly so.   The course of Church and Wales Streets differs slightly, so that in traveling north it is necessary to bear somewhat to the left in crossing West Street, but this change in course is not such as to affect the view between points here material.   The surface of Church Street for a width of 20 feet is asphalt, beyond which, on either side, is 2 or 3 feet of macadam, so that the width of the street available, and used, for travel is from 24 to 26 feet.   The sidewalk on the easterly side of the street is 8 feet from the asphalt, and 2 to 3 feet less from the used portion of the street. The deceased was on the asphalt portion of the street, 65 or 70 feet northerly of West Street when struck by defendant's car which was being driven northerly along Wales and Church Streets.

[2-5]   As the case is presented, defendant, in effect, admits his own negligence, but attempts to avoid the consequences thereof on the ground that plaintiff failed to show freedom from negligence on the part of deceased.   Of course, if plaintiff failed to do this no legal responsibility attaches to defendant.   Unfortunately, we do not have deceased's version of how the acci-

dent happened, or what he did, if anything, to avoid it. Assuming as defendant claims, and testified, that he was driving only 12 miles an hour when he discovered deceased about 15 feet ahead of him, and that deceased was then only 3 or 4 feet west of the easterly edge of the asphalt, it must be admitted that had deceased looked in the direction of West Street at the time he started to cross Church Street he could not have failed to see defendant's approaching car, and was negligent in getting into the place that he did. But plaintiff's evidence tended to show an entirely different situation, both as to the speed of defendant's car and as to where deceased was when the car struck him. His evidence tended to show that a car like defendant's could be stopped on Church Street, when such street was in its then condition, in 33 feet, if traveling 25 miles an hour; that defendant saw deceased when 15 feet from him, and immediately applied both brakes which were "working all right"; that he did not stop his car until he reached a point approximately 45 feet beyond deceased, on the extreme west side of the asphalt; that his car was "going fast" after it struck deceased, and was "going quite fast" up to the place where it finally stopped. There was no evidence as to the speed of such a car when it required 60 feet in which to stop, but, manifestly, it would be much in excess of 25 miles an hour. In view of this evidence of speed, it was for the jury to say whether at the time deceased started to cross the street defendant's car was where he could have seen it had he looked. If it was not, his failure to look at that point was in no sense the proximate cause, in whole or in part, of the accident. He could not be prejudiced by failure to look if there was nothing that he could see. There was evidence, however, from which it might fairly and reasonably be inferred that deceased, in fact, looked. It appeared, without dispute, that his eyesight was normal and that he was "perfectly well"; that he traveled southerly in the direction of West Street, whence defendant came, on the walk on the easterly side of Church Street, to the point where he attempted to cross the latter street; that he was "going right along just as any man would walk" and "seemed to be looking straight ahead"; that when he started to cross Church Street he was "going right along just like any man would walk out." We can conceive of no better evidence than this that he in fact looked, unless it be, perhaps, his own words that he did so.

[6]   Plaintiff's evidence tended to show, too, that deceased was west of the center of the asphalt when struck; that as defendant's car entered Church Street it took a diagonal course—swerved—towards the west side of the street, and continued that course until just before it struck deceased.   To be sure, the evidence of the only witness who placed deceased so far west is challenged as too improbable to be worthy of belief, but we think its verity was for the jury.   This witness testified that he saw deceased reel out from the front of defendant's car, turn round once or twice and land on the east side of the street; that "he reeled out more on one leg"; that while reeling he traveled to the east approximately 12 or 15 feet.   The defendant insists that since the doctor who attended the deceased testified that the fracture of deceased's left leg was such that he could not stand on it, or bear his weight on it, it was a physical impossibility for him to travel the distance testified to by this witness, but common knowledge of what a person can do on one leg does not justify this claim.   Improbable though this evidence may seem, it cannot be said to be impossible.

If deceased when struck was where the evidence of this witness placed him, he was where he had a right to assume that he would not be run down by a car driven north from West Street, especially a car entering Church Street on the easterly side thereof, as defendant's car unquestionably did, provided such car was operated in a careful and prudent manner.   He had reached a point where, as was said in *Aiken* v. *Metcalf,* 90 Vt. 196, 97 Atl. 669, the jury might reasonably infer that a prudent man would give his chief attention to cars approaching him from the north and relax somewhat his watchfulness for cars approaching from the south.

[7, 8]   We think it clear that on the evidence in the instant case the question of contributory negligence was for the jury. In reaching this conclusion we recognize to the full extent the duty of a pedestrian to exercise due diligence to avoid injury, but we hold that in the circumstances here disclosed the question of whether deceased exercised such diligence was for the jury.

Our attention is called to cases from other jurisdictions which hold that one who crosses a city street at any point other than at a regular crossing is required to exercise a higher degree of care than when crossing at a regular crossing; but, since a

careful examination of the entire record fails to disclose any attempt to raise this question below, we do not consider it.

*Judgment affirmed.*