EDWARD STEELE *v.* A. A. FULLER.

Special Term at Rutland, November, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed February 4, 1932.

*Jones & Jones* for the defendant.

*Bert H. Stickney* for the plaintiff.

THOMPSON, J.   The plaintiff seeks to recover damages for personal injuries and damage to his automobile received in an automobile collision.   There was a trial by jury, and a verdict and judgment thereon for the plaintiff.   The defendant excepted.   At the close of the evidence, the defendant moved for a directed verdict.   The motion was denied.   The only ground of the motion that we consider is that the plaintiff was guilty of contributory negligence as matter of law.

306

The collision occurred on July 13, 1929, about nine o'clock p.m. At that time it was rather dark and cloudy. The defendant, driving a Cadillac car, was traveling south on the main highway from Brandon to Rutland. He had a flat tire and stopped to change tires. The highway had a tarvia surface nineteen feet wide where the defendant stopped. About 250 or 300 feet south from that place is the brow of a hill which descends to the south. The defendant stopped his car on his right of the center of the highway with his right wheel about eighteen inches from the edge of the tarvia. For thirty or forty rods north of his car, and south to the brow of the hill, the highway is straight and nearly level; but with a slight upgrade to the south. The highway is of sufficient width so that another car could have passed defendant's car on either its left or right.

While the defendant was changing tires, the plaintiff who had driven automobiles fourteen years, approached from the north. He was driving a 1928 Chrysler sedan, model "52." His car was equipped with four-wheel hydraulic brakes and the headlights that came on that model of car. The plaintiff was traveling about twenty miles an hour as he approached defendant's car. A car traveling from the south passed the plaintiff about fifty feet north of defendant's car. The plaintiff was blinded by its headlights, and he did not see defendant's car until he was about twenty feet from it. He applied the emergency brake immediately when he saw he was going to run into it, but he was too close to stop and he collided with its rear while he was traveling about twenty miles an hour. He did not apply the foot brake. After the plaintiff saw defendant's car he did not attempt to pass it on its left. He testified as follows as to this matter: "Q. Did you turn your car to the left at all? A. No. Q. Was there any reason why you couldn't? A. No, sir. Q. Was there any obstruction in your way to prevent your driving your car to the left to pass the Fuller car? A. No. Q. You saw it twenty feet away? A. About twenty feet. Q. You already passed this other car going in the opposite direction. A. Ayeah. Q. So there was no obstruction as far as you could see, Mr. Steele, after you saw the Fuller car why you couldn't turn to the left? A. I was too close to it. Q. That was twenty feet, you were too close? A. Mh-hmh, the brakes didn't hold to stop me.

Q. Did they slow you up at all? A. I don't remember. Q. You don't remember that? A. No.''

The plaintiff also testified that when he was one hundred feet, and when he was sixty feet, from defendant's car he was not blinded by the headlights of the car approaching from the south, but he did not see defendant's car from either of those distances. He first testified that the headlights of his car would show objects in the road about thirty feet ahead; that the brakes were in good condition, and that the emergency brake would stop the car when traveling twenty miles an hour in about thirty feet. The following questions were then asked him and answers given: ''Q. So you think you could stop your car exactly within the vision of your headlights? A. No, couldn't, slow it down some, couldn't exactly stop. Q. What, you couldn't exactly stop? A. No, just emergency brake, probably forty feet, stop still, slow down. Q. So you would have to go forty feet before you could stop your car? A. Mh-hmh. Q. With the application of emergency brake? A. Yes.''

The plaintiff's son testified that the lights of the Chrysler car were tested about a month before the accident; that the lights were twenty-one candle power; that he drove the car in the night during the week of the accident with the same lights as of the night of the accident, and that they would show an object in the road fifty feet ahead.

It appears from the uncontradicted evidence of Robert Keith, a state inspector of motor vehicles, who had driven a Chrysler ''52'' equipped with twenty-one candlepower lights, in the nighttime, that if the brakes were in good mechanical condition they would stop such a car traveling twenty miles an hour in less than twenty-two feet, and if the lights were properly focused and adjusted they would show a substantial object in the road one hundred and fifty feet ahead of the car.

The negligent act of the defendant on which the plaintiff bases his right to recover is that the defendant did not have a lighted tail-lamp as required by the provisions of section 71, No. 70, Acts of 1925, and because of the absence of such light he ran into the defendant's car. While the evidence is conflicting, the jury, by its verdict, necessarily found that the defendant's tail-lamp was not lighted as required by the statute, and that the absence of such light was a proximate cause of the

collision. We do not disturb this finding of the jury. The jury also found that the plaintiff was free of contributory negligence. The sufficiency of the evidence to support this finding is challenged by the defendant's motion for a directed verdict.

■■ It is true, as argued by the plaintiff, that contributory negligence is ordinarily a question of fact for the jury, where the law has settled no rule of diligence, but when the material facts are undisputed, and are so conclusive that but one reasonable deduction can be drawn therefrom, the question is one of law for the court. *Parker, Admr.* v. *Smith,* 100 Vt. 130, 135 Atl. 495; *Crichton* v. *Barrows Coal Co.,* 100 Vt. 460, 139 Atl. 252. And the burden is on the plaintiff to show that he was free from negligence that contributed in the least degree to the accident. *Bianchi* v. *Miller,* 94 Vt. 378, 382, 111 Atl. 524; *Wellman, Admr.* v. *Wales,* 97 Vt. 245, 254, 122 Atl. 659; *Merrihew's Admr.* v. *Goodspeed,* 102 Vt. 206, 216, 147 Atl. 346, 66 A. L. R. 1109. The plaintiff's conduct in operating his car as he approached defendant's car and at the time of collision is not disputed. The testimony of such conduct comes from his own lips. See, also, *Gallagher* v. *Montpelier & Wells River R. R.,* 100 Vt. 299, 305, 137 Atl. 207, 52 A. L. R. 744; *Yardley* v. *Rutland R. R. Co.,* 103 Vt. 182, 188, 153 Atl. 195.

■ While the plaintiff had the right to assume that other motorists would not obstruct the highway unlawfully, and would show the statutory lights if they stopped, he could not for that reason omit any of the care that the law demanded of him, as the rule applies only in favor of one whose own conduct measures up to that of a prudent and careful man in like circumstances. *Page* v. *Mazzei* (Cal. App.) 299 Pac. 119; *Cushing Refining, etc., Co.* v. *Deshan,* 149 Okl. 225, 300 Pac. 312.

■■ This Court has frequently said that motorists on the public highways have equal and reciprocal rights to the use thereof. The legal standard of care required of them is unvarying and alike at all times—that of a prudent man under all the circumstances; but experience has led the courts to adopt, and the Legislatures to enact, certain rules of diligence which are intended to standardize the rights and duties of users of the highways. These rules are additional factors to be considered in a given situation by which negligence may be measured and determined between conflicting claimants exercising a common

right, and they may be determinative in many cases. *Jasmin* v. *Parker,* 102 Vt. 405, 416, 148 Atl. 874; *Landry* v. *Hubert,* 101 Vt. 111, 113, 141 Atl. 593, 63 A. L. R. 396.

One rule is that there is a duty at all times imposed upon the operator of a motor vehicle to maintain a lookout for persons and property on the highway, and to use reasonable care to avoid inflicting injuries on such persons or property, *Smith* v. *Gould* (W. Va.), 159 S. E. 53; and he is chargeable with knowledge of objects in the highway which are in plain view. *Harrington* v. *Rutland R. R. Co.,* 89 Vt. 112, 119, 94 Atl. 431; *McDonald* v. *Yoder,* 80 Kan. 25, 101 Pac. 468. Another rule is that one who drives an automobile along a public highway in the dark must drive at such a speed that it can be stopped within the distance that can be seen ahead of it, *i.e.,* within the range of its headlights. *Holsaple* v. *Superintendents of Poor of Menominee County,* 232 Mich. 603, 206 N. W. 529; *Fisher* v. *O'Brien,* 99 Kan. 621, 162 Pac. 317, L. R. A. 1917F, 610.

Section 71 of No. 70, Acts of 1925, provides that during the period from thirty minutes after sunset to thirty minutes before sunrise every motor vehicle, except a motor cycle, while in motion on a public highway shall display two lighted lamps on the front which shall render any substantial object on the ground clearly visible at least one hundred and fifty feet ahead of such vehicle. That the plaintiff was violating this provision of the statute at the time of the collision cannot be successfully questioned. His own testimony is that the headlights of his car would show objects in the road about thirty feet ahead. He argues, however, that since he was confronted with a sudden emergency, he could only give an estimate as to how far his headlights would show ahead, and he refers to the testimony of Carl Sird and of his son, Edward Steele, Jr., as evidence from which the jury could find that his headlights complied with the requirements of the statute. Sird testified that when he saw plaintiff's car soon after the collision the headlights were ''bright lights.'' He was asked if he could give some judgment as to how far they would reflect ahead, and he replied: ''If they were in such position as they should have been one hundred to a hundred fifty feet.'' In connection with Sird's testimony, the plaintiff calls attention to the testimony of young Steele that the lights were tested about a month before the accident. In his

direct examination by the plaintiff, he testified that he drove the car with the same lights in the night during the week of the accident. He was then asked the following questions: Q. Have you some judgment as to how far ahead you could pick out an object with the use of those lights in the night time? A. Yes. Q. How far? A. Fifty feet. Q. That is all? A. Well, the focus—'' At this point he was interrupted by the examiner and the rest of his answer was not given, but he was examined about the lights being tested, and he testified that they were tested about a month before the accident. There is nothing in the testimony of Sird from which it can be inferred that the lights complied with the requirements of the statute, as it does not appear that they ''were in such position as they should have been.'' Viewed in the light most favorable to the plaintiff, it appears clearly from the undisputed evidence that as he approached defendant's car his headlights would not show a substantial object on the road more than fifty feet ahead of his car.

It is obvious that if the plaintiff's headlights had been adjusted so as to show a substantial object on the road at least one hundred and fifty feet ahead of his car, he would have seen defendant's car for at least ninety feet before he was blinded by the lights of the approaching car, and could have avoided the collision, as he testified that he was not blinded by the lights when he was sixty feet from defendant's car. Under these circumstances the violation of the statute as to headlights by the plaintiff made a *prima facie* case of contributory negligence. It did not give rise to a conclusive presumption of negligence but to a rebuttable presumption which might be overcome by proof of attendant circumstances; the burden being on the plaintiff to meet or overcome this *prima facie* case by other evidence. *Landry* v. *Hubert, supra; Crichton* v. *Barrows Coal Co., supra.*

The plaintiff argues that when he was blinded by the lights of the approaching car he was confronted with a sudden emergency through no fault of his, and he did in that emergency all that a prudent man would or might have done, and therefore the question of his contributory negligence was for the jury. See *Hatch* v. *Daniels*, 96 Vt. 89, 94, 117 Atl. 105. This position is not tenable.

■ The law is well settled that when the operator of a motor vehicle, driving in the nightime, is temporarily blinded by the lights of an approaching car, it is his duty either to stop until his vision is restored, or reduce his speed and have his car under such control that he can stop immediately if necessary; and the failure to do so justifies a charge of negligence. *Cole* v. *Wilson*, 127 Me. 316, 143 Atl. 178, 179; *House* v. *Ryder*, 129 Me. 135, 150 Atl. 487; *Terry* v. *Smylie* (Miss.), 133 So. 662; *Osburn* v. *De Young*, 99 N. J. Law, 204, 122 Atl. 809; *Hammond* v. *Morrison*, 90 N. J. Law, 15, 100 Atl. 154; *Budnick* v. *Peterson*, 215 Mich. 678, 184 N. W. 493; *Holsaple* v. *Superintendents of Poor of Menominee County, supra; Day* v. *Cunningham*, 125 Me. 328, 133 Atl. 855, 47 A. L. R. 1229; *Mathers* v. *Botsford*, 86 Fla. 40, 97 So. 282, 32 A. L. R. 881; *Jaquith* v. *Worden*, 73 Wash. 349, 132 Pac. 33, 48 L. R. A. (N. S.) 827; *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82, 239 Pac. 709, 41 A. L. R. 1027; *Devine* v. *Chester*, 7 N. J. Misc. R. 131, 144 Atl. 322; *Ruth* v. *Vroom*, 245 Mich. 88, 222 N. W. 155, 62 A. L. R. 1528; *Downing* v. *Baucom's Admx.*, 216 Ky. 108, 287 S. W. 362; *Robinson* v. *Logan Township*, 90 Pa. Super. Ct., 139. In some of these cases, the facts were similar to those in the instant case. The blinded driver, without stopping or reducing the speed of his car, crashed into an unlighted car which had stopped on the road ahead. In all of the cases it was held that the blinded driver was guilty of negligence as matter of law.

In *Hammond* v. *Morrison, supra,* the defendant, while temporarily blinded by the reflection of street lights into his eyes by the windshield of his car, ran into and killed the plaintiff's decedent who was standing behind a trolley car. The court, reversing a judgment for the defendant, said: ''His (defendant's) own story demonstrates his lack of care. No man is entitled to operate an automobile through a public street blindfolded. When his vision is temporarily destroyed in the way which the defendant indicated, it is his duty to stop his car, and so adjust his windshield as to prevent its interfering with his ability to see in front of him. The defendant, instead of doing this, took the chance of finding the way clear, and ran blindly into the trolley car behind which the decedent was standing. Having seen fit to do this, he cannot escape responsibility if his reckless conduct results in injury to a fellow being.''

This is simply the application to a certain situation of the general rule already referred to, but in varying language, that it is negligence as a matter of law to drive an automobile along the highway in the dark at such speed that it cannot be stopped or turned aside within the distance that objects can be seen ahead of it.

As is said in *Cole* v. *Wilson, supra:* "It is possible, of course, to conceive of circumstances, such as the too close proximity of a car in the immediate rear of the confused driver, which might excuse him from making an abrupt and immediate stop." There is no evidence of such a situation in the instant case. The plaintiff's own testimony shows that as matter of law he was guilty of negligence which was a proximate cause of the collision. After he was blinded by the lights of the approaching car he did not stop or reduce the speed of his car, and when his vision was restored he was so close to defendant's car that he could not avoid running into it. The court below should have granted the defendant's motion for a directed verdict.

*Judgment reversed, and judgment for the defendant to recover his costs.*