McCartney *v.* Pennsylvania R. R. Co., Appellant.

Argued March 17, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, MAXEY, DREW and LINN, JJ.

*Robert D. Dalzell,* of *Dalzell, Dalzell, McFall & Pringle,* for appellant.—Plaintiff was guilty of contributory negligence: Schwarz v. R. R., 211 Pa. 625; Haskins v. R. R., 293 Pa. 537; Gray v. R. R., 172 Pa. 383; Kraus v. R. R., 139 Pa. 272; Hughes v. Canal Co., 176 Pa. 254; Hovenden v. R. R., 180 Pa. 244; Gasser v. Ry., 266 Pa. 493; Nolder v. R. R., 278 Pa. 495; Smith v. McAdoo, 266 Pa. 328; Kalbach v. Ry., 277 Pa. 307.

*C. J. Tannehill,* with him *Arthur B. McBride,* for appellee.—A question of fact supported by the positive evidence of one witness cannot be withdrawn from the jury no matter how strongly it may be contradicted: Zimmerman v. P. R. R., 302 Pa. 406; Saxman v. McCormick, 278 Pa. 268; Hugo v. B. & O. R. R., 238 Pa. 594.

Plaintiff was not guilty of contributory negligence as a matter of law: Miller v. Tiedemann, 249 Pa. 234; Kolich v. Ry., 303 Pa. 463; Mountain v. Window Glass Co.,

263 Pa. 181; Dalmas v. Kemble, 215 Pa. 410; Ely v. Ry., 158 Pa. 233; Schmidt v. Ry., 244 Pa. 205; Cronmuller v. Telegraph Co., 232 Pa. 14; Thomas v. R. R., 275 Pa. 579; P. R. R. v. Werner, 89 Pa. 59; Wolfe v. R. R., 22 Pa. Superior Ct. 335; Meitzner v. R. R., 224 Pa. 352; Gray v. R. R., 172 Pa. 383; Shaffer v. R. R., 258 Pa. 288; P. & R. R. R. v. Carr, 99 Pa. 505; P. R. R. v. Werner, 89 Pa. 59.

OPINION BY MR. JUSTICE LINN, April 18, 1932:

The only question is whether plaintiff's contributory negligence should be declared as matter of law; the learned trial judge stated that he was in some doubt about it.

On December 27, 1927, at about four o'clock in the afternoon, plaintiff was injured at a grade crossing. In the charge, the crossing is described as a "permissive crossing"; it was composed of planks, ashes and cinders, and was used for the purpose of supplying coal, etc., to a power house constructed on the south or river side of the railroad. The railroad, at that point, and for miles along the Ohio River, has four tracks extending eastward and westward. Alongside the tracks, on the north, is the Lincoln Highway. We shall refer to the tracks as numbers 1 to 4, number 1 being nearest to the Lincoln Highway. Plaintiff was entirely familiar with the crossing; for four years immediately prior to the accident he had been driving a motor truck to and from the power house. On December 27th he came up the Lincoln Highway, with his truck loaded with six tons of coal, and, reaching the crossing, stopped at the usual stopping place, ten feet from track number 1. From that point, the railroad is straight toward the west (the direction from which the train that struck him came) for more than a mile; toward the east, he had a view of more than 1,500 feet to a curve. He testified that it was a "mild afternoon," "partly cloudy," not "raining or snowing." After stopping, "he looked up and down the

railroad tracks," and saw "a freight train was just leaving the crossing when he got......" there; it was a long freight train on track number 2, moving westward. He stopped "about ten seconds" while the train cleared the crossing and went "200 to 250 feet." On his left, or to the east, 700 to 1,000 feet away, he saw another freight train approaching but "running very slow."

He started to cross the railroad when the westbound freight train was "200 to 250 feet" to his right; when he reached the second track, that train had moved 400 to 500 feet west of him. Referring to that train, he was asked this question: "Making any smoke?" He answered "Yes sir." Later, he was asked "Where was this smoke from the freight train you were talking about?" He replied that "the smoke was west of this train...... lying down on the ground and through the air there." "Q. Did that have any effect upon your ability to see down to the west? A. Well, I couldn't see any beyond the smoke." He could then see westward on track number 4 "about 500 feet."

He crossed track number 3 and, in his words, was "just going on the 4th track," in low gear, "two or three miles an hour" when he saw the approaching eastbound express train about 300 feet away. By the collision most of the truck and its contents were scattered over track number 3 and he was injured. In cross-examination he testified that the reason he didn't see the express train sooner was "the smoke was there, thick,......" The distance from the first rail nearest the Lincoln Highway to the last rail of track number 4 is 44 feet.

The question on that evidence is: Would a prudent man, possessed of plaintiff's familiarity with the crossing, have attempted to cross with a heavily loaded truck, as plaintiff did, or would he have waited until the disappearing smoke had cleared enough to enable him to see along a track that he knew was straight for over a mile and on which he knew express trains might approach at high speed at any moment?

Obstruction of view of possibly approaching trains is no excuse for the failure to "stop, look and listen." Perfunctory compliance is not sufficient. The object is to get information. What conduct will comply with the rule depends, of course, on the character of the obstruction; if it is momentarily changing, the change must be taken into account. If an obstruction is permanent, what must be done in the exercise of care may be very different from what is possible and sufficient if the obstruction is temporary or, as in this case, is actually disappearing. What a pedestrian in such circumstances should do, may differ essentially from what is required of the driver of a passenger automobile, or the driver of a heavily loaded slow moving motor truck. In each case all the pertinent elements composing the transaction must be considered.

The plaintiff was entirely familiar with the intrinsically dangerous character of this crossing, the use of the four-track railroad and the difficulties in making the crossing with a loaded truck. He testifies that "this train was coming at terrific speed." When, therefore, before starting across, he saw a westbound freight train approaching 700 to 1,000 feet away on his left, and also another westbound freight train 400 to 500 feet on his right, obscuring his view by smoke, with the knowledge that he could not see possibly approaching eastbound trains rapidly moving on tracks numbers 3 or 4, until they came through the smoke within a few hundred feet of him, and then at a time when he would probably be on those tracks, he was clearly risking a known danger in attempting to cross. There can be no doubt about that obvious risk. If a rapidly moving train came through that smoke, a collision was inevitable, as the event proved. On the other hand, he saw that the smoke was disappearing, and that in a short time it would have disappeared with the western movement of the freight train. It may be that he did not wish to wait longer at the crossing and perhaps be delayed by the westbound

freight train approaching on his left; but in deciding what to do in that contingency, the law required him also to consider what might happen on tracks numbers 3 or 4 if he crossed before the obscuring smoke cleared away.

The application of the rule is illustrated by Nolder v. P. R. R. Co., 278 Pa. 495; a pedestrian stopped at a crossing until a train passed him; he waited until it was 100 feet away before he started to cross, but while crossing, was struck by a train approaching from the opposite direction on the next track. "He knew," we said, "from his familiarity with the crossing that the passing train would obstruct his full view of the other track because of a curve until it was 200 feet beyond him"; if he had waited until the train had passed that distance from him, he would then have had a much longer unobstructed view of the track and could have decided whether it was safe to cross with all the knowledge that the circumstances permitted. We held that his contributory negligence barred recovery.

It is not the length of the view alone that distinguishes; all the elements of the occurrence revealed by the testimony must be taken into account. So considering them, stated, as they have been, by taking the oral evidence most favorably for plaintiff, we think he should not have attempted to cross the tracks until his westward view was enlarged by the disappearance of the smoke from the fourth track sufficiently to enable him to see whether he could prudently attempt to make the crossing before an eastbound train came along.

The judgment is reversed and is here entered for defendant.