Hower *v.* Pennsylvania R. R., Appellant.

Argued April 11, 1932. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*H. Montgomery Smith,* with him *C. B. Waller* and *L. E. Waller,* for appellant.—The court is not required to believe what the physical facts demonstrate to be untrue: Miller v. R. R., 299 Pa. 63; Radziemenski v. R. R., 283 Pa. 182; Lunzer v. R. R., 296 Pa. 393; Joseph v. R. R., 294 Pa. 315; Myers v. R. R., 150 Pa. 386.

The unbending rule as to the duty of a traveler on a public highway as he approaches a railroad crossing over it, is to stop, look and listen: Sefton v. R. R., 64 Pa. Superior Ct. 218; Haskins v. R. R., 293 Pa. 537; Barton v. R. R., 283 Pa. 577; Smith v. McAdoo, 266 Pa. 328.

Where a person drives an auto in front of a rapidly approaching train which he could have seen if he had looked, he cannot recover for injuries sustained: Seiwell v. Hines, 273 Pa. 259.

The negative testimony offered by plaintiff in a grade crossing case that a whistle was not heard, must give way to the affirmative statements of defendant's witnesses, who were listening and in a position to hear that a whistle was sounded.

To the same effect, see Zotter v. R. R., 280 Pa. 14; Craft v. Hines, 272 Pa. 499; Rapp v. R. R., 269 Pa. 266;

Urias v. R. R., 152 Pa. 326; Grimes v. R. R., 289 Pa. 320; Miller v. R. R., 299 Pa. 63.

*R. S. Hemingway,* with him *J. Atlee Cryder* and *Ralph R. John,* for appellee.—The physical facts and uncontradicted evidence conclusively demonstrate plaintiff and his employee, Lynn, were not guilty of contributory negligence as a matter of law: Howard v. R. R., 219 Pa. 358; Mills v. R. R., 284 Pa. 605; Mountain v. Glass Co., 263 Pa. 181; King v. Darlington Co., 284 Pa. 277; Guilinger v. R. R., 304 Pa. 140; Peruzzi v. R. R., 99 Pa. Superior Ct. 519, 524; Mills v. R. R., 284 Pa. 605, 607; Sharpless v. R. R., 286 Pa. 439, 445.

The court committed no error prejudicial to defendant in its general charge with respect to the imputation of Lynn's negligence to the plaintiff: Johnson v. Ins. Co., 218 Pa. 421; Reznor Mfg. Co. v. R. R., 233 Pa. 369.

The testimony of plaintiff and his witnesses as to the absence of sufficient signals of the train's approach was positive and not negative: Rottmund v. R. R., 225 Pa. 410; Simons v. Ry., 254 Pa. 507; Cubitt v. R. R., 278 Pa., 366, 368; Allen v. Ry., 274 Pa. 518, 520; Razzis v. Ry., 273 Pa. 550, 552; Peruzzi v. R. R., 99 Pa. Superior Ct. 519.

OPINION BY MR. JUSTICE KEPHART, May 9, 1932:

Appellee's truck was damaged and he sustained personal injuries in a grade crossing collision with a special train of appellant. Plaintiff drove a loaded truck from a driveway behind the railroad station, and made a right-hand turn to the highway about 25 feet south of the main or only through track which the highway crosses at a right angle. He continued to move until the front of his truck was 10 to 15 feet away from the first or south rail of the track. Here he stopped to look for approaching trains. The track on which the train approached from the east extends in a straight line for more than 1800 feet. The plaintiff and helper on the

truck looked and listened for trains. Another helper jumped from the running board and went forward to the track where he too looked and listened. Had the vision been clear, it is undisputed that this man could have seen over 1,800 feet down the main track to the east, and appellee and his helper on the truck perhaps half that distance, their view being partially obscured by a corner of the railroad station to their right, or by a freight car on the siding beyond the station. However, on the far side of the through track, alongside it and extending over the crossing, was a side track. On it and 100 feet from the crossing was standing an engine with freight cars, waiting for the special train to go by. Smoke and steam came from the engine and obscured the vision in the direction from which the passenger train would approach. Appellee testified that when he first looked he could see to the far end of the station platform, that is, about 400 feet away, but that he could not see that far all the time because the smoke from the engine would swirl right up the track. This smoke was low enough to obstruct his view at times; at times it was not; when it was over the track he could not see more than 200 feet. He looked after he started, the track was clear up to the end of the platform, but the smoke was in front of the station when he saw the train coming through the smoke. The man who went on the track testified that he could see as far as the end of the station platform, because the locomotive was throwing out smoke up the track. He failed to see the locomotive until it was in front of the station. Laycock, the helper in the truck, testified, "When you got on the track you could only see up there 100 or 200 feet because of this smoke," and that the train was about 150 to 200 feet away when he first saw it, at which time the front wheels of the truck were about at the second rail. With this situation confronting him, appellee proceeded to drive his truck across, continuing, as he said, to look and listen. His truck was struck by the oncoming train almost immediately as it entered the tracks.

The principal question is whether appellee was guilty of contributory negligence in attempting to cross the tracks while his view was obstructed as it was by smoke or steam. In this respect, the case is ruled and controlled by McCartney v. P. R. R., 307 Pa. 226, filed April 18, 1932, with which it is almost exactly identical. In that case, the plaintiff's view was so obstructed by smoke from a passing freight train that his vision was not clear over 500 feet up the track. He testified he first saw the approaching train after it emerged from the smoke, and when it was about 300 feet away. In that case, as in the instant one, the plaintiff was thoroughly familiar with the crossing he was using, and was also driving a heavily loaded truck. The court there determined that an ordinarily prudent man would not, under the circumstances, have attempted to cross, but would have waited until the smoke had cleared enough to enable him to see sufficiently far along the track, which he knew was straight for a considerable distance, and on which he knew express trains might approach at high speed at any time. Mr. Justice LINN, speaking for the court, there said, "If it [the obstruction] is momentarily changing, the change must be taken into account. If an obstruction is permanent, what must be done in the exercise of care may be very different from what is possible and sufficient if the obstruction is temporary or, as in this case, is actually disappearing...... He was clearly risking a known danger in attempting to cross. There can be no doubt about that obvious risk. If a rapidly moving train came through that smoke, a collision was inevitable, as the event proved. On the other hand, he saw that the smoke was disappearing, and that in a short time it would have disappeared with the western movement of the freight train. It may be that he did not wish to wait longer at the crossing and perhaps be delayed by the westbound freight train approaching on his left; but in deciding what to do in that contingency, the law required him also to consider what might

happen on tracks 3 or 4 if he crossed before the obscuring smoke cleared away."

Appellee's testimony clearly shows that the smoke was not a permanent but merely a temporary obstruction. He was asked, "Was this smoke low enough to obstruct your view up the track?" and answered, "Well, at times it was; at times it was not." This being the case, he was bound to wait until it had cleared sufficiently to enable him or his employees to obtain a sufficient view of the tracks, and his crossing without so doing must, under McCartney v. P. R. R., supra, be regarded as contributory negligence. See Nolder v. P. R. R., 278 Pa. 495, and also Kasarda v. Lehigh Valley R. R. Co., 222 Pa. 146. In the latter case, Justice STEWART said: "Doubtless it sometimes occurs that smoke and steam from a passing train obstruct the view of the railroad tracks quite as much as the moving cars. When this is the case, it may be the duty of the traveler—depending always on conditions at the time—to await the lifting or removal of the obstruction."

Judgment of the court below is reversed and here entered n. o. v. for defendant.