ALMA L. PALMER *v.* HOWARD MARCEILLE ET AL.

May Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed October 2, 1934.

502

*Lawrence, Stafford & O'Brien* for the plaintiff.

*Wayne C. Bosworth, James B. Donoway*, and *Fenton, Wing & Morse* for the defendants.

MOULTON, J. There is little dispute concerning the facts in this case. The plaintiff was taking her children to school in her automobile, and driving at a speed of about thirty miles an hour. The road had a tarvia surface 18 to 20 feet wide, beyond which there was a shoulder, and beyond that a ditch 3 feet deep and 6 feet wide. She observed, about 500 feet ahead, a column of dense smoke, proceeding from a fire at the road side, which entirely covered the right-hand side of the highway. She slackened speed, but to what extent she was unable to say, a car's length before she entered the obscured area, and kept to the extreme right of the traveled portion of the road. As she did so, her car collided with the rear of truck standing, in part at least, upon the tarvia surface, and she suffered the injuries for which she has brought suit. She did not see the truck before the impact. The defendants were employees of the State highway board. Plue, the superior, directed Marceille, his helper, to gather into

piles and remove the scrapings from the shoulder of the road preparatory to oiling the surface, and to clean out the ditches. Marceille, assisted by one Wimett, proceeded to do so and, having partly filled the truck with rubbish Wimett, under Marceille's direction, set fire to a forkfull of hay which had been raked out of the ditch, the smoke from which was blown diagonally across the road, behind the truck, which was standing on the right-hand side of the highway at a distance variously estimated as being 5 to 10 feet beyond the fire. In causing the fire to be kindled Marceille was acting under the instruction of county road superintendent Cady. At the time of the accident the fire had not been burning over five minutes and the smoke had been blowing across the highway for three or four minutes. Plue was not present at that time. The truck was of one and one-half tons capacity with a flat-bottomed platform and rack body and weighed with its then load about two and one-half tons. The collision was of such force that the plaintiff's automobile was overturned and badly damaged, and the truck, which had its emergency brake set, was shoved a distance of 20 feet off the road and through the ditch, and the rack was sprung out of shape. The road was substantially level and perfectly straight for some distance on either side of the place of the collision. The plaintiff was familiar with it. Marceille took no steps to warn any approaching travelers of the presence of the truck, although, at the time of the kindling of the fire and until the accident occurred, he was standing nearby, doing nothing. Witnesses called by the plaintiff, who passed the place in the opposite direction just before the accident, testified that the smoke obscured only on the side of the road upon which the plaintiff was driving.

At the close of the plaintiff's evidence the trial court directed a verdict for the defendants, and the plaintiff excepted. The grounds for the motion upon which the ruling was based are in brief these: (1) That the plaintiff was contributorily negligent; (2) that she assumed whatever risk might be encountered by her election to drive into the smoke at a substantially undiminished speed; (3) that Marceille was not negligent; (4) that he was engaged in the prosecution of a governmental project, and therefore not liable, even if negligent; (5) that Plue was not present, did not direct the placing of the truck or the lighting of the fire, and had no participation in the occur-

504

rence, and therefore could not be held liable for the act or default of Marceille. We take up these grounds in inverse order.

The last-mentioned ground is not an issue here. It is not briefed by the plaintiff as error, and no claim is made that, on the evidence, Plue was liable. The judgment in his favor is, therefore, to be affirmed.

█ The fact that Marceille was a public employee performing a governmental act does not exempt him from personal liability for negligent misfeasance. This principle has been repeatedly recognized. In *Florio* v. *Schmolz*, 101 N. J. Law, 535, 129 Atl. 470, 40 A. L. R. 1353, the defendant, the driver of a fire truck while going to a fire, negligently collided with the plaintiff's horse and wagon. The court said (129 Atl. at page 471) : "He (the defendant) must answer for his negligence, though in the performance of a public duty, in the same manner as if he were an individual in private life and had committed a wrong to the injury of another. The servant of the municipality is required to perform his duty in a proper and careful manner, and when he negligently fails to do so, and in the performance of his duty negligently injures another, his official cloak cannot properly be permitted to shield him against answering for his wrongful act to him who has suffered injury thereby." And again (pages 472, 473 of 129 Atl.) : "We think that a sound public policy requires that public officers and their employees shall be held accountable for their negligent acts in the performance of their official duties to those who suffer injury by reason of their misconduct. Public office or employment should not be made a shield to protect careless public officials from the consequences of their misfeasance in the performance of their public duties." In *Moynihan* v. *Todd*, 188 Mass. 301, 74 N. E. 367, 108 A. S. R. 473, the action was predicated upon the alleged negligent blasting of a rock in the highway by which the plaintiff was injured, and the evidence tended to support the claim. The defendant was the superintendent of streets and directed the operation. He claimed exemption from liability because of his public employment and the governmental nature of the work. The court said (page 305 of 188 Mass., 74 N. E. 367, 369) : "We are of opinion that the principle which underlies the rule that public officers and other agencies of government are not liable for negligence in the performance of public duties goes no further than to relieve them from liability for nonfeasance, and for the

misfeasance of their servants or agents. For a personal act of misfeasance, we are of opinion that a party should be held liable to one injured by it, as well in the performance of a public duty as when otherwise engaged.'' The plaintiff's exceptions to a directed verdict for the defendant were sustained. In *Nowell* v. *Wright,* 3 Allen (Mass.) 166, 80 A. D. 62, the defendant was the tender of a drawbridge over the Charles River appointed under the provisions of a statute and receiving a salary from the public funds. The negligence alleged and which the plaintiff's evidence tended to show was the failure to shut the gates and to hang out lanterns while opening the draw, by reason of which the plaintiff fell into the river. This language appears in the opinion (pages 169, 170 of 3 Allen) : ''Under these circumstances, a personal liability attached to him, (the defendant) for an injury to a third person caused by his improper discharge of his duties. His act was not a mere naked act of nonfeasance. The opening of the draw was the cause of the injury. That act was done by the defendant. It is true that it was lawful and proper to open the draw, but such opening was to be done in a proper manner. That required due regard and caution for the safety of travelers passing the bridge, and the use of reasonable safeguards for their protection. The defendant, by omitting to discharge his duty in this respect, may be held responsible for an injury occasioned thereby.'' An instruction to the effect that the defendant was bound to use reasonable care in reference to travelers passing over the bridge while the draw was open, and was liable for any negligence in this respect to any person injured thereby was approved. In *Skerry* v. *Rich,* 228 Mass. 462, 117 N. E. 824, it is said that : ''A public officer undoubtedly is liable for personal acts of misfeasance.'' And in *Rowley* v. *City of Cedar Rapids,* 203 Iowa, 1245, 212 N. W. 158, 161, 53 A. L. R. 375, 381 : ''The fact that the defendant Kennedy was an officer of the city, and that at the time he was traveling the streets in its governmental capacity (conceding the petition to so show), did not relieve him from the duty to exercise ordinary care in so doing or from a proper observance of a statutory requirement.'' In *Downes* v. *Town of Hopkinton,* 67 N. H. 456, 40 Atl. 433, the opinion states that if a highway surveyor is guilty of negligence in failing to give reasonable notice of a blast to the plaintiff, she has a remedy, if injured thereby, in an action against him, although the town would not

506

be liable for his negligence. See, also, dictum in *Butterfield* v. *City of Boston*, 148 Mass. 544, 545, 20 N. E. 113, 2 L. R. A. 447, and cases cited in annotation 40 A. L. R. 1358. Inferentially the doctrine is recognized in *Battey* v. *Town of Duxbury*, 23 Vt. 714, 719. We conclude that the fourth ground of the motion is without merit.

■ On the question of Marceille's negligence, the defendant places reliance upon the decision in *Warren* v. *State*, 219 App. Div. 124, 219 N. Y. S. 530, wherein the facts were much like those in the instant case. Employees of the state were burning weeds and leaves at the side of the road, the smoke from the fire blowing across the highway and concealing their truck parked thereon. The plaintiff's automobile was driven into the smoke and collided with the truck. The action was under a statute by which the state was liable for injuries caused by a defect in the highway. The majority of the court held (page 533 of 219 N. Y. S.) that it was not negligent to stop the truck temporarily while the men were setting fire to the piles of leaves, or to burn the leaves on that side of the road from which the wind was blowing, since no reasonable man would have foreseen that the condition thereby created would subject travelers on the highway to peril. We are not inclined to adopt this view. The language of the dissenting justice (page 536 of 219 N. Y. S.), that ''the parking of the truck beside a much-traveled road, and making a smoke screen before it, with no signals to indicate that repairs were going on, or that a dangerous condition existed, constituted the negligent creation of an obstruction by the state's employees,'' seems better to characterize the situation. We hold that the failure of Marceille, under the circumstances, to give warning of the presence of the concealed truck to travelers upon the highway was evidence upon which the jury would have been justified in finding that he was negligent.

■ Whether the truck was parked or left standing upon the improved or used part of the highway so as to interfere with traffic thereon, as prohibited by P. L. 5110, subd. XIII, was also a question for the jury. The violation of a safety statute gives rise to a rebuttable presumption of negligence. *Steele* v. *Fuller*, 104 Vt. 303, 158 Atl. 666; *Landry* v. *Hubert*, 101 Vt. 111, 113, 114 Atl. 593, 63 A. L. R. 396. The evidence on this point was conflicting. One witness testified that the truck was standing entirely upon the hard surface of the road; others said that it

was partly upon the shoulder and as near the ditch as was safe, only 2½ feet of its width being upon the traveled part. Moreover, to park a car means something more than a mere temporary stoppage for a temporary purpose. *Newell Contracting Co.* v. *Berry,* 223 Ala. 109, 134 So. 870, 872; *Dare* v. *Boss,* 111 Oregon, 190, 224 Pac. 646, 648; *Village of Wonemoc* v. *Taubert,* 203 Wis. 73, 233 N. W. 755, 756, 757, 72 A. L. R. 224. Whether the truck was so "parked" within the sense of the statute was for the jury. *Martin* v. *Oregon Stages,* 129 Oregon, 435, 277 Pac. 291, 294. The third ground of the motion is unavailing.

It is unnecessary to consider the question of assumption of risk, as raised in the second ground of the motion, in view of what we shall have to say concerning the first ground, which involves the issue of contributory negligence.

█ The burden was upon the plaintiff to show that there was no negligence on her part which contributed to the injury. *Steele* v. *Fuller, supra,* page 308 of 104 Vt., 158 Atl. 666; *Shumm's Admx.* v. *Rutland R. R. Co.,* 81 Vt. 186, 192, 69 Atl. 945, 19 L. R. A. (N. S.) 973; although direct or affirmative evidence to the point is not required. *Bombard* v. *Newton,* 94 Vt. 354, 357, 111 Atl. 510, 11 A. L. R. 1402.

█ As we have seen, she saw the smoke when she was some 500 feet from it. It was, as she testified, so thick that she could see nothing in or beyond it; she did not know how far it extended ahead of her; neither did she know what there might be in or beyond it, or whether there might be someone driving a horse and wagon or walking in the obscured area. She said, and was corroborated, that she reduced speed to an undetermined extent, when about a car's length from the smoke, but the force of the impact, which not only wrecked but overturned her car, and drove the truck, with brakes set, a distance of 20 feet out of the road and partly across the ditch, showed that the speed could not have been materially abated. On her left hand the road was clear of smoke; it was straight and level; there was nothing to hinder her from observing whether it was clear of approaching traffic, and, if it were, turning to that side while passing the fire.

The defendant, not unreasonably, draws an analogy between her situation and that of a person blinded by the lights of an approaching automobile, or one driving through fog. In *Steele* v. *Fuller, supra,* the defendant had stopped his automobile on

the highway and was changing a tire. It was night, and, as the evidence tended to show, his tail light was out. The plaintiff, driving in the same direction, behind the defendant, at twenty miles an hour was temporarily blinded by the lights of a car proceeding in the opposite direction, but did not change his speed and did not see the defendant's automobile until too late to avoid a collision. Although the space to the left of the automobile was clear, the plaintiff made no attempt to turn out in that direction, after observing the obstruction. We held that the plaintiff was contributarily negligent as a matter of law, and said (page 311 of 104 Vt., 158 Atl. 666, 669): "The law is well settled that when the operator of a motor vehicle, driving in the nighttime, is temporarily blinded by the lights of an approaching car, it is his duty either to stop until his vision is restored, or reduce his speed and have his car under such control that he can stop immediately if necessary; and the failure to do so justifies a charge of negligence." And again (page 312 of 104 Vt., 158 Atl. 666, 669), that this is simply the application to a certain situation of the general rule "that it is negligence * * * to drive an automobile along the highway in the dark at such speed that it cannot be stopped or turned aside within the distance that objects can be seen ahead of it." The doctrine is also recognized in *Gallagher* v. *M. & W. R. R. R. Co.*, 100 Vt. 299, 305, 137 Atl. 207, 52 A. L. R. 744, and *Yardley* v. *Rutland R. R. Co.*, 103 Vt. 182, 188, 153 Atl. 195.

There is, of course, no difference in principle between driving in the nighttime and driving in the daytime when the visibility is not clear. *Ewing* v. *Chapman*, 91 W. Va. 641, 114 S. E. 158, 160; *Fannin* v. *Minneapolis St. P. & S. S. M. Ry. Co.*, 185 Wis. 30, 200 N. W. 651, 652; *Lett* v. *Summerfield & Hecht*, 214 N. W. 939, 940; *Savage* v. *Public Service Ry. Co.*, 89 N. J. Law, 555, 99 Atl. 383, 384; and *Dominick* v. *Haynes Bros.*, 13 La. App. 434, 127 So. 31, 32, are cases which apply the rule stated in *Steele* v. *Fuller* to situations where the highway was obscured by smoke or fog. And see *Warren* v. *State, supra,* upon this point.

Indeed it would appear to be only logical to say that, since one is required to proceed at such a speed that his car can be stopped or turned aside within the distance that objects can be seen ahead of it, he should not proceed at all when the obscurity is such that he can see nothing. In *Robinson* v. *Mutnick*, 102

N. J. Law, 22, 131 Atl. 67, 68, it is said that "The law requires the driver of a vehicle to stop when his vision is entirely obscured by a temporary obstruction, such as a dust cloud or a smoke screen, when his failure to do so would jeopardize the safety of others, and to remain at a standstill until the temporary obstruction has come to an end." In *McCartney* v. *Pennsylvania R. R. Co.*, 307 Pa. 226, 161 Atl. 63, and in *Hower* v. *Pennsylvania R. R. Co.*, 308 Pa. 246, 162 Atl. 231, the respective plaintiffs were held to be contributarily negligent in driving upon railroad crossings where the view of the tracks was temporarily obstructed by smoke or steam, without waiting until this condition had disappeared so that the tracks were sufficiently visible to determine whether trains were approaching. In *Castille* v. *Richards* 157 La. 274, 102 So. 398, 37 A. L. R. 586, 587, where there was a cloud of dust so thick that the occupants of a car could not see 10 feet ahead of them, it was held to be negligence not to come to a full stop until the dust had subsided. See, also, generally, cases cited in annotations, 37 A. L. R. 591; 73 A. L. R. 1026.

In *Chaffee* v. *Duclos,* 105 Vt. 384, 386, 166 Atl. 2, it is said that the general rule is not a hard and fast one to be invariably applied in every situation, and in that case there were circumstances tending to show that, owing to the grade and slight curve in the road, and the fact that the rear end of the parked truck was of a color which nearly resembled, and blended with, the color of the road, the plaintiff was acting with due care in supposing the highway to be clear. See, also, a similar situation in *Hatch* v. *Daniels,* 96 Vt. 89, 117 Atl. 105. This qualification of the rule is illustrated in several cases cited by the plaintiff, *Marsh* v. *Burnham,* 211 Mich. 675, 683, 179 N. W. 300; *Devoto* v. *United Auto Transportation Co.,* 128 Wash. 604, 223 Pac. 1050, 1051, 1052; *Waring* v. *Dubuque Electric Co.,* 192 Iowa, 508, 185 N. W. 130; *Rozycki* v. *Yantic, etc., Co.,* 99 Conn. 711, 122 Atl. 717, 37 A. L. R. 582, 585, wherein on the evidence concerning the nature of the obscurity, or the speed or the watchfulness and care of the driver, or other circumstances, the question of his negligence was held to be for the jury. See, also, *Rice* v. *Foley,* 98 Conn. 372, 119 Atl. 352. Other decisions of similar import may be found cited in annotations, 37 A. L. R. 594, and 73 A. L. R. 1027.

But these cases are clearly distinguishable from the one before us. We have here no material conflict in the testimony as it affects this question. The story comes mainly from the lips of the plaintiff herself. There is nothing to show that she was confused or deceived by the appearance of the smoke cloud. Its extent was not determinable, and its density was apparent and appreciated; the presence of pedestrians and vehicles within its pall was unknown; the left-hand side of the highway was clear; there was ample time to stop or turn aside before reaching the obscured area; it was obvious that the visibility therein would be such that any object could be seen only when so close to the automobile that a stop, in order to avoid a collision, must be practically instantaneous; the rate of speed was plainly such that the plaintiff would have been unable to stop even if she could have seen the truck after entering the smoke, before the accident. While the plaintiff was entitled to assume that no obstacle was unlawfully upon the highway, she was not thereby absolved from the exercise of reasonable care. *Steele* v. *Fuller*, *supra*, page 308 of 104 Vt., 158 Atl. 666. We think that the record shows the plaintiff to have been guilty of contributory negligence which bars her recovery. The motion for a directed verdict was properly granted upon this ground.

*Judgment affirmed.*